Warren J. ADAMS, David Sidney Miller and Texas School of Practical Nursing, Inc., Appellants,

v.

UNITED STATES of America, Appellee.

No. 21217.

United States Court of Appeals Fifth Circuit.

June 18, 1965.

Rehearing Denied Aug. 6, 1965.

Chris Dixie, Houston, Tex., Henry Klepak, Dallas, Tex., George Dixie, Houston, Tex., for appellants.

Gerald David Mize, Asst. U. S. Atty., James R. Gough, Asst. U. S. Atty., Woodrow Seals, U. S. Atty., Morton L. Susman, Asst. U. S. Atty., Houston, Tex., for appellee.

Before HUTCHESON and GEWIN, Circuit Judges, and KILKENNY,* District Judge.

HUTCHESON, Circuit Judge.

Convicted and sentenced after jury trial in the United States District Court for the Southern District of Texas, on charges of mail fraud and of conspiracy to violate the mail fraud statutes, defendants have appealed. Their respective sentences were: the incorporated school was fined $13,600; Miller, its president, was sentenced to eighteen months to be served, to five years suspended, and was fined $10,800; while Adams, its director, was sentenced to nine months to be served, to five years suspended, and was fined $5400.

The appellant school was, and held itself out to be, primarily a correspondence school for practical nurses, but it also offered an optional training period at its offices. The term "practical nurse" has no statutorily defined meaning or recognition in Texas, and no state license as such is granted or authorized. The State does recognize, license, and regulate Registered Nurses (R.N.) and Licensed Vocational Nurses (L.V.N.). A practical nurse, less skilled than either of these, is apparently more on the order of a nurse's aide, performing such duties as making beds, bathing patients, giving some types of shots, etc. The school was a private profit-making venture, not a part of any hospital or clinic. The highest professional qualification among its full-time employees was that of registered nurse. Those students who attended the optional training at the offices heard guest lectures by visiting doctors on occasion, but they were not given any actual supervised experience with live patients during their training. There is no accreditation available for such a school, but the school awarded a diploma certifying the recipient as a "Graduate Practical Nurse", and apparently all students passed the course and received the diploma.

Expert testimony as to the value of the course was conflicting. Some doctors and nurses testified that it provided all that a practical nurse needed to know, while others said that the graduates of such a course would not be given any more consideration by a prospective employer than would someone who had not taken it. Graduation from appellant school did not qualify the graduate to take any licensing examination or receive any certificate given by the State. It seems that most hospitals will not hire unlicensed nurses. These graduates probably could obtain employment as nurse's aides or orderlies, but is is not shown that their training or diploma had any effect in making this easier to do.

There is evidence that some of the appellant school's salesmen represented that the graduates would be issued a license, although the printed material makes no mention of a license. Appellant's usual reply to license inquiries seems to be that practical nurses are not required to have a license in Texas, which is true. However, the types of nurses which seem likely to get jobs as nurses, namely Registered Nurses and Vocational Nurses, do have to be licensed.

The Government's attack was, and is, primarily a contention that appellants fraudulently held out that graduates of their course would be highly trained and well qualified practical nurses, with unlimited employment opportunities at greater pay rates than nurse's aides, while in fact the correspondence school offered only limited training with no practical experience, producing practical nurses whose qualifications suited them, at best, for serving as nurse's aides and who were not qualified for any type of license or certificate, and consequently could not work in most hospitals as nurses.

* Of the District of Oregon, sitting by designation.

Appellants assert seven errors, to wit:

(1) Appellants urge that the indictment as a whole, as well as certain specific charges of misrepresentation, should have been dismissed because they concern matters merely of medical opinion. For this view they rely primarily upon American School of Magnetic Healing v. McAnnulty, 187 U.S. 94, 23 S.Ct. 33, 47 L.Ed. 90 (1902), holding in effect that in an area of conflicting medical opinion, a mail fraud conviction may not rest upon the opinion of one set of medical experts when there are contradictory expert opinions. They assert that neither "misrepresentation of fact" nor "wilfullness" can be established under the mail fraud statutes where expert opinions differ. They also assert that the indictment is not sufficiently specific to give notice of the crimes charged and that some of the non-disclosures charged are not criminal.

(2) Appellants also assert that the evidence is insufficient to support the alleged misrepresentations and concealment of facts. (As to concealment, the Government's main argument is that appellants should have fully advised the applicants that they would not be eligible for a nurse's license following the course instead of, as they did by silence on the matter, inducing the belief that they would be).

The Government, answering points (1) and (2), asserts that the indictment was sufficient in law, that it sufficiently alleged the crime involved, and that it was supported by sufficient evidence to support the jury verdict of guilty.

(3) Appellants, relying on the McAnnulty case, supra, urge that the court erred in authorizing the jury to convict on conflicting expert opinion as to the value of its course and the competence of its graduates.

The Government, countering McAnnulty with Leach v. Carlile, 258 U.S. 138, 42 S.Ct. 227, 66 L.Ed. 511 (1922), insists that the case did not turn on the adoption of one school of conflicting medical opinion as against another, but that the fraud charges were that the representations and concealments as to what the course was, did not fairly and truthfully advise as to what it in fact was, and that such representations and failures to inform of the true facts were wilfully and knowingly made to deceive and for gain; that if the course was of some slight value, it was not as represented. The Government relies primarily upon Leach v. Carlile, supra, for the proposition that even if the course had some value, it was a fraud on the public to represent, as appellants clearly did, that the school turned out highly trained and qualified Graduate Practical Nurses.

(4) Appellants complain of the refusal of the Court to order production of Jencks Act statements of a postal inspector, whom appellants called to testify, on the theory that the Government's cross-examination went beyond the scope of the direct examination and thereby made the inspector the Government's witness and subjected his statement to the Jencks Act.

The Government contends that the Act requires production only when the witness was *called* by the Government, and that, in any event, it did not go beyond the scope of appellants' direct examination. Appellants also complain of the delay, until late in the trial, of the production of another statement ordered produced by the court and of the fact that two such statements were not produced until after the trial. The Government says it could not find the statements and that they were not in the possession of the United States attorneys who complied as best they could, and that, in any event, the appellants were not prejudiced by the delay on the one produced late because the jury found it not guilty on the count to which the statement pertained. As to the two that were not produced until after trial, the Government argues that they are consistent with the testimony given by the witnesses who gave the statements, so no prejudice resulted by failing to produce them.

(5) Appellants insist that the court erred in excluding two exhibits which consisted of employment applications filled out by the school's salesmen which were offered to show that appellant school thought it had hired high class salesmen, though it is now alleged that they had made fraudulent representations. The Government argues the applications are hearsay and not germane to the real issue, which is what the salesmen represented to the students, and that they were therefore properly excluded.

(6) Appellant asserts that the only damaging evidence as to representations about licensing by its salesmen came from surprise witnesses not named in the indictment, and that it had no opportunity to investigate these transactions to prepare its defense as to them.

The Government replies that these witnesses were called to show the general scheme with which appellant was charged and as to which it had notice, and that the Government is not obliged to disclose its witnesses in advance of trial, absent a statute or rule so requiring.

(7) Appellants argue that they were prejudiced by the Government's arguments which described the United States attorneys as public servants and the defense counsel's opinions as "opinions bought and paid for".

The Government asserts that no objection was made below on this point and that the comments were merely the results of the heat of the trial, stirred in part by defense counsel comments; that they were, therefore, not improper and, if they were error, they were not prejudicial but harmless error.

We are of the clear opinion: that the indictment was adequate and legally sufficient; that there was sufficient evidence to support the jury verdict; that none of the assignments and complaints constitute reversible error; and that the judgment should, therefore, be and it is hereby

Affirmed.