**Eddie Maxcie HOUSTON, Appellant,**

v.

**STATE of Texas, Appellee.**

**No. A14–81–241–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

May 13, 1982.

Rehearing Denied May 27, 1982.

Discretionary Review Denied
Sept. 15, 1982.

Motion for Rehearing on Petition for
Discretionary Review Denied
Feb. 1, 1984.

Leonard Roth, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., Houston, for appellee.

Before J. CURTISS BROWN, C.J., and JUNELL and PRICE, JJ., concur.

J. CURTISS BROWN, Chief Justice.

This is an appeal from a conviction of murder. The questions presented are (1) whether the circumstantial evidence presented was sufficient to prove appellant's guilt beyond a reasonable doubt, (2) whether the trial court abused its discretion in denying appellant's motion for new trial based on newly discovered evidence, (3) whether the definition of "intentional" in the Texas Penal Code is unconstitutional, (4) whether the definition of "intentional" in the court's charge contained a fundamental variance from the statutory definition, (5) whether certain statements made by the prosecutor during argument to the jury were so prejudicial as to deny appellant a fair trial, and (6) whether appellant was effectively assisted by his trial counsel.

George T. Kilpatrick (Kilpatrick or deceased), a deputy sheriff, was murdered by a shotgun blast to the head at close range. He was discovered in his blue pickup truck on the night of November 15, 1979, in an area of Houston commonly known as the Pearl Harbor area. The Harbor area has a reputation for being a rough neighborhood. The pickup, which had a camper on the back, was found on West Street. The right front tire was scuffed; the right rear tire was flat and the rim was bent. The spare tire was found inside the camper. It was normally padlocked under the bed of the pickup. Kilpatrick's jewelry was not found on him nor was it ever recovered. His wallet was found and turned in by a street sweeper employed by the City of Houston.

Eddie Maxcie Houston (Houston or appellant) was indicted for the murder on April 16, 1980. Upon a plea of "not guilty" a trial before a jury was begun on July 14, 1980. Houston was convicted of murder as charged in the indictment under TEX.PENAL CODE ANN. § 19.02 (Vernon 1974). Evidence was presented at the punishment phase of the trial that Houston had six prior final convictions. The jury sentenced him to confinement in the Texas Department of Corrections (T.D.C.) for 99 years. Appeal was perfected to this Court.

Appellant brings six grounds of error. He complains the trial court committed error (1) by convicting him upon circumstantial evidence insufficient to exclude every other reasonable hypothesis except that of his guilt, and (2) by overruling his motion for a new trial based on new discovered evidence provided by Leroy Etheridge. He further complains (3) that the definition of "intentional" in the Texas Penal Code is unconstitutional because it lessens the burden of proof for the State and (4) that even if the statutory definition is constitutional, the definition of that term in the court's charge varied from the statute in such a way as to mislead the jury. Appellant also contends (5) that the prosecutor engaged in improper jury argument and (6) that he was ineffectively assisted by his trial counsel.

The State's case against appellant was primarily based upon the testimony of two witnesses. Earnest McCardell, nicknamed Big Man, testified that he was on West Street the night of November 15, 1979, waiting for a lady friend. He heard a commotion and saw a pickup truck with a camper and a flat. He saw appellant, whom he had known for about seven years, at the front of the pickup carrying "something shining with a stock on it." He assumed it was a shotgun. Houston was involved in an argument with the driver of the truck. McCardell testified the time was about 7:30 or 8:00 p.m., and that due to the good lighting in the area he had a clear view of the scene. He saw appellant move around to the driver's door of the pickup. At this point McCardell knew something was about to happen, and he did not want to witness it. He started his truck. As he was driving away he heard a shot. After a period of time he notified the police of what he had seen although he tried to keep his identity a secret.

The second witness was Richey Mae Brown (Brown). She testified she had known appellant since her childhood. On the night in question she was in the vicinity of West Street and heard a shot. About 15 minutes later she saw appellant walking down the street with a shotgun or rifle broken down over his shoulder. Furthermore, she testified she did not see McCardell on the street that night.

Appellant presented an alibi defense. He attempted to show he was in California at the time of the murder. His mother testified that a girl friend, Patricia Ann Smith (Smith), had returned from California and convinced appellant to return with her. A neighbor testified that he took the couple to the bus station on Sunday morning November 11, 1979, but did not see them actually board the bus. Receipts were introduced into evidence showing that the couple purchased travel insurance at that time. Telephone records were introduced showing a long-distance collect call to appellant's mother on November 13, 1979, from California. Mrs. Houston testi-

fied she talked to the couple at that time. The purpose of the call was to let her know they had arrived safely. Smith, who was subpoenaed from California, testified that appellant stayed with her in California until several days before Christmas. They were staying at a motel where Smith's cousin stayed. Smith testified they paid for their room sometimes by the week and sometimes by the day but never signed any registration. Later, they moved to another motel. A letter was introduced which was received by appellant's mother from her son in California around November 16, 1979. Appellant's common-law wife testified that she looked for appellant during the times in question, but he was not in the general area where she normally would see him. She found out from his mother that he had gone to California with Smith. She apparently wrote letters to appellant in California and even sent him money. Smith testified that the reason appellant returned to Houston was that he heard there were charges pending against him in the matter before us.

The State then presented two other witnesses who testified they knew appellant and saw him in the Harbor area within a week or two after the murder of Kilpatrick. Finally, an investigator who went to the second motel in which appellant and Smith supposedly stayed was called. His check of the registration cards revealed no record the couple had actually stayed there.

█ Appellant's first ground of error attacks the sufficiency of the evidence. We first note the State's case is built upon circumstantial evidence, and the jury was correctly charged in the consideration of such evidence. In addressing appellant's contention our review is guided by several well established rules of law. Every circumstantial evidence case must be tested by its own facts to determine the sufficiency of the evidence. *Brasfield v. State,* 600 S.W.2d 288 (Tex.Cr.App.1980); *Indo v. State,* 502 S.W.2d 166 (Tex.Cr.App.1973). A conviction on circumstantial evidence cannot be sustained unless the circumstances exclude every other reasonable hypothesis except that of the guilt of the accused. Proof amounting to only a strong suspicion or mere probability is not sufficient. *Faulk v. State,* 608 S.W.2d 625 (Tex.Cr.App.1980); *Carlisle v. State,* 549 S.W.2d 698 (Tex.Cr.App.1977). An appellate court, however, must view the evidence in a light most favorable to the verdict. This includes accepting all reasonable inferences that tend to support the jury's verdict. Any conflicts in the evidence must be resolved in favor of such verdict, and the result must be an affirmance unless reasonable minds could not conclude that the totality of evidence presented is inconsistent with the hypothesis of innocence. *Vaughn v. State,* 607 S.W.2d 914 (Tex.Cr. App.1980).

The record does not disclose a strong circumstantial evidence case, but this is not the test. Both McCardell and Brown knew the appellant well and positively identified him at or near the scene of the crime with a weapon that in all probability was a shotgun, the type of weapon used in the murder. McCardell placed the appellant at the truck when a shot was fired, even though he did not actually see the crime. Brown heard a shot and saw appellant shortly thereafter. The jury could have believed these witnesses even though McCardell had a prior conviction for misdemeanor theft, and Brown had prior convictions too numerous to mention here.

█ Appellant's alibi was presented by witnesses who, while not subject to attacks on their credibility by prior offenses, could certainly have been biased due to their close relationship with the appellant. With the exception of smith's testimony there was no evidence to show appellant actually remained in California until Christmas. The State argued that appellant, upon reaching California, returned as quickly as possible. Therefore, accepting the reasonable inferences of McCardell's and Brown's testimony, and resolving the conflicts presented by the alibi defense in favor of the verdict rendered, we hold the evidence was sufficient to support the conviction.

Appellant's first ground of error is overruled.

In his second ground of error, appellant contends he should have been granted a new trial on the basis of newly discovered evidence. After being incarcerated appellant claims one day while washing he talked briefly to Leroy Etheridge (Etheridge), another inmate, who said he had information concerning appellant's innocence. Appellant relayed the information to his attorney who filed a motion for new trial. In a hearing on the motion Etheridge testified that during the second week in November, 1979, he observed a blue pickup truck drive up to some apartments. The truck contained a white male and a woman Etheridge knew to be a prostitute. They entered the apartments. A short time later Etheridge heard some commotion and saw two men he knew from the Harbor area drag the white man out of the apartments and place him in the truck between them. One had a sawed off shotgun and the other a pistol. The truck drove off, but stopped after crossing a railroad track a short distance away. Both doors opened and he heard a shot. The two men got back into the truck and continued on their way. Several days later he overheard a conversation indicating the two men he had seen were responsible for the killing of the law enforcement officer in the area.

Etheridge stated the reason he did not come forward with this information was that he was a "bond jumper" in a case involving burglary of a habitation pending in Montgomery County. He was convicted for this offense, receiving a sentence of 12 years which he was presently serving. He had a prior conviction for robbery and one for possession of marijuana which also involved car theft. He claimed that prior to meeting appellant at the prison he had written letters to both the District Attorney and the Sheriff of Harris County concerning what he knew, but he received no response. He stated his reason for testifying was that he did not want to see an innocent man be convicted and sentenced. Etheridge claimed that the one contact he had with appellant was the only contact because T.D.C. rules and procedures made it virtually impossible for prisoners in one wing to have personal contact with those in another. Etheridge also suggested he had been discouraged by the Sheriff's Department in coming forward with evidence since someone had already been convicted. He testified he was scared concerning what might happen to him at the prison for being considered a "snitch." On cross-examination Etheridge could not give any more specific information concerning the identity of the white man he had seen or the date when the incident happened. It was also brought out that letters written by Etheridge to the District Attorney after appellant's counsel was made aware of Etheridge's story indicated he wanted to make a deal. He offered evidence on several other crimes. This was contrary to his prior statement that he was only concerned about the conviction of an innocent man.

The State produced several more witnesses. Their testimony established there was a barricade designed to prohibit vehicular traffic on one side of the railroad tracks which Etheridge said the truck crossed. There was also evidence that it was possible to go around the barricade and that there was one time when at least a portion of the barricade was down and had to be repaired. The condition of the barricade at the time of the crime was not conclusively established.

A supervisor from the T.D.C. unit in which appellant and Etheridge were incarcerated testified that based upon business records of T.D.C., Etheridge and appellant were together in the writ room on eight different occasions. On two of these occasions they signed in next to each other. This would indicate they were together in line to get their materials from the library. The supervisor stated that while under T.D.C. rules the two should not have been able to communicate with each other, such a rule was difficult to enforce. It would also have been possible for them to have communicated with each other during meals, at weekly movies, during church services, and during shower time.

After all the evidence on the motion for new trial was presented, the trial judge retired to his chambers for about fifteen minutes to consider the evidence and the authorities to which he had been directed. He overruled appellant's motion.

In *Van Byrd v. State*, 605 S.W.2d 265, 267 (Tex.Cr.App.1980), the Court of Criminal Appeals set out the test for determining abuse of discretion when a trial court rules on a motion for new trial based on newly discovered evidence under TEX. CODE CRIM.PRO.ANN. art. 40.03(6) (Vernon 1979).

The overruling by the trial court of a motion for new trial based on newly discovered evidence will not constitute an abuse of discretion unless the record shows (1) the evidence was unknown to the movant before trial; (2) that the defendant's failure to discover it was not due to want of diligence on his part; (3) that its materiality was such as would probably bring about a different result on another trial; and (4) that it was competent, not merely cumulative, corroborative, collateral or impeaching. *Hernandez v. State*, Tex.Cr.App., 507 S.W.2d 209. To be material the new evidence must be shown to be probably true and of such weight as to probably produce a different result at another trial. *Hernandez v. State, supra; Williams v. State*, Tex.Cr.App., 504 S.W.2d 477; *Whitmore v. State*, Tex.Cr.App., 570 S.W.2d 889; *Carlisle v. State*, Tex. Cr.App., 549 S.W.2d 698. Whether the new evidence is probably true is a determination for the trial judge. *Williams v. State, supra; Eddlemon v. State*, Tex. Cr.App., 591 S.W.2d 847.

The only question in this case is the materiality of the evidence. In other words, did the trial court abuse its discretion in ruling that the evidence did not meet the test of being probably true and of such weight as to probably produce a different result at a new trial.

■ We are of the opinion that the lack of positive identification and the possibility that the story could have been manufac-

tured, along with the other discrepancies and doubts which are present when one views the entire hearing on the newly discovered evidence, make this case one in which this Court should not second-guess the fact finder who observed the demeanor of the witnesses and was in the best position to decide the issue. *Eddlemon v. State*, 591 S.W.2d 847 (Tex.Cr.App.1979); *Williams v. State*, 504 S.W.2d 477 (Tex.Cr. App.1974). Appellant's second ground of error is overruled.

■ In his third ground of error, appellant attacks the constitutionality of the definition of "intentional" provided in TEX. PENAL CODE ANN. § 6.03(a) (Vernon 1974), as follows:

(a) A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result.

Appellant cites *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), which concerned a presumption that a person intends the ordinary consequences of his voluntary acts. Appellant claims the definition, while not in the nature of a presumption, shifts the burden of proof on intent. The definition merely provides that in order to prove the culpable mental state of intent, evidence must be presented which proves beyond a reasonable doubt that it was an accused's "conscious objective or desire to engage in the conduct or cause the result." Appellant's contention is without merit, and his third ground of error is overruled.

In his fourth ground of error, appellant contends that the definition of "intentional" in the court's ·charge to the jury contains a variance with the statutory definition calculated to mislead the jury. The court's charge contained the phrase "or to circumstances surrounding his conduct" instead of the phrase "or to a result of his conduct" contained in the statute. Since no objection was made at the trial the question before us is whether this variance constitutes fundamental error.

Fundamental errors are those calculated to injure the rights of an accused or to deprive him of a fair and impartial trial. TEX.CODE CRIM.PRO.ANN. art. 36.19 (Vernon 1981); *Sattiewhite v. State,* 600 S.W.2d 277, 285 (Tex.Cr.App.1979). It is for this reason that it is not necessary to show a proper objection has been made at trial. To determine if such fundamental error exists the charge must be viewed in its entirety. *White v. State,* 610 S.W.2d 504, 507 (Tex.Cr.App.1981). The fundamental error claimed in this case is that the definition in the court's charge permitted the jury to convict the appellant on proof different than or less than that required by the indictment with respect to the element of intent.

The Court of Criminal Appeals has held that as long as the portion of a charge applying the law to the facts does not authorize conviction on a theory not alleged in the indictment, the fact that an erroneous definition was included does not constitute fundamental error. *Bright v. State,* 585 S.W.2d 739, 743–44 (Tex.Cr.App.1979); *Plunkett v. State,* 580 S.W.2d 815 (Tex.Cr. App.1978), rehearing denied, 591 S.W.2d 907 (1980). In *Hanks v. State,* 625 S.W.2d 433, 435 (Tex.App.—Houston [14th Dist.] 1981), this Court ruled on a charge with exactly the same definition of intent before us now, holding it not to be fundamental error. We have viewed the charge before us as a whole and hold it includes no theories additional to those alleged in the indictment, does not lessen the burden of the State, and is not calculated to deprive appellant of a fair trial. Appellant's fourth ground of error is overruled.

In his fifth ground of error, appellant complains of improper argument by the prosecutor to the jury at the guilt—innocence phase of the trial. However, no objections were made at the time. Unless arguments of the prosecutor are so prejudicial that no instruction could cure the harm, failure to timely object waives any error. *Plunkett v. State, supra.*

We have reviewed the statements complained of and hold they are not so prejudicial that an instruction from the trial court to disregard the statements would not have cured any harm. Appellant's fifth ground of error is overruled.

In his sixth ground of error, appellant complains of ineffective assistance rendered by his trial counsel. This claim is based on two statements made during argument. First, his counsel argued that additional witnesses from California to substantiate the alibi defense would have been too much expense for the State. Secondly, his counsel argued that appellant was not a leading citizen and had been in trouble all of his life. Such arguments were reasonable to explain to the jury why no other witnesses were brought from California to testify and to face up to a fact which was certainly apparent to the jury at the punishment phase. The fact that other counsel would have tried a case differently does not show inadequate representation. *Ex Parte Prior,* 540 S.W.2d 723, 727 (Tex.Cr.App.1976). Having reviewed the totality of the representation, we hold appellant was effectively assisted by his counsel at trial. *Mercado v. State,* 615 S.W.2d 225 (Tex.Cr.App.1981). Appellant's sixth ground of error is overruled.

The conviction is affirmed.