**Eric Thomas BORGEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 946–83.**

Court of Criminal Appeals of Texas, En Banc.

May 16, 1984.

---

Murry B. Cohen, Stanley G. Schneider, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Winston E. Cochran, Jr. and Richard Mason, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

Appellant was convicted of sexual abuse. V.T.C.A., Penal Code, § 21.04(a)(1). Punishment was assessed by the jury at 10 years' imprisonment and a fine of $10,-000.00.

On appeal the Houston Court of Appeals (1st District) reversed the conviction as a result of unobjected to, but improper prosecutorial jury argument at the guilt stage of the trial. *Borgen v. State*, 657 S.W.2d 15 (Tex.App.—Houston (1st)—1983). We have granted the State's petition for discretionary review to determine the correctness of that decision.

In concluding his argument at the guilt stage of the trial the prosecutor stated:

"... my Lord, you know I don't know if there was quite that much force used ad those threats and so on and so forth and why didn't she do this or that, why did she go here or there and let me tell you sometimes I rather suspect that women find themselves in positions such as this in terms of their own personal safety, it may very well be the best thing to do, to tolerate it as much as you can short of being killed and do you believe for a second that because of lover boy over here not performing sex with [prosecutrix] that she nose dived out a second story window? Well, if you believe that one thing, it remains to me undeniably clear and that one thing is *as long as lawyers are for hire justice is for sale.* Thank you." (Emphasis added.)

There was no objection to this argument, no request for a jury instruction to disregard, and no motion for mistrial.

The Court of Appeals recognized the general rule that any impropriety in the prosecutorial argument is waived by a defendant's failure to make a proper and timely objection. *Romo v. State*, 631 S.W.2d 504 (Tex.Cr.App.1982); *Sanchez v. State*, 589 S.W.2d 422 (Tex.Cr.App.1979). That court, however, noted an exception to the general rule where the argument of the

prosecutor is so prejudicial that an instruction to disregard will not cure the harm. *Romo v. State*, supra; *Smith v. State*, 541 S.W.2d 831 (Tex.Cr.App.1976); *Rodriquez v. State*, 530 S.W.2d 944 (Tex.Cr.App.1975).

Relying upon *Boyde v. State*, 513 S.W.2d 588 (Tex.Cr.App.1974); *Bray v. State*, 478 S.W.2d 89 (Tex.Cr.App.1972), and *Lewis v. State*, 529 S.W.2d 533 (Tex.Cr.App.1975), the Court of Appeals found the argument so prejudicial that a jury instruction to disregard would not have cured the error. The court wrote:

> "The statement 'so long as lawyers are for hire, justice is for sale' is not as direct an attack upon defense counsel for accepting employment to represent a person accused of crime as the arguments made in *Bray* and *Lewis*, supra; however, the import of such a statement is identical when viewed in light of the court's reasoning in *Boyde*, supra.
>
> "Appellant's second ground of error is sustained; ...."

Since appellant's second ground of error was that he "was denied due process of law ...." by such argument, the Court of Appeals in effect also found a violation of due process by virtue of the unobjected to argument.

In *Todd v. State*, 598 S.W.2d 286, 296, 297 (Tex.Cr.App.1980), it was stated:

> "It is settled that the approved general areas of jury argument, within which all proper arguments must fall are (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Dunbar v. State*, 551 S.W.2d 382 (Tex.Cr.App.1977); *Alejandro v. State*, 493 S.W.2d 230 (Tex. Cr.App.1973). Even when an argument exceeds the permissible bounds of the above areas, such will not constitute reversible error unless, *in light of the record as a whole*, the argument is extreme or manifestly improper, violative of a mandatory statute or injects new facts, harmful to the accused into the trial proceeding. *Kerns v. State*, 550 S.W.2d 91 (Tex.Cr.App.1977); *Thompson v. State*, 480 S.W.2d 624 (Tex.Cr.App. 1972)." (Emphasis added.)

With this background we consider the argument in light of the whole record. There was a stark contrast between the versions of the appellant and the prosecutrix as to the circumstances underlying the alleged offense. There was undisputed evidence that prior to indictment the prosecutrix had an attorney call appellant's first employed counsel (not his trial counsel) to see if the matter could be settled for compensation. The appellant refused.

The prosecutrix, a 20-year-old divorcee, left her secretarial position at 11 a.m. on July 28, 1981, to drive a co-worker, Beverly Villa, to her (Villa's) apartment to pick up her car which was being repaired. The prosecutrix related that upon entering Villa's apartment she encountered appellant, a 43-year-old Norwegian sailor, and Villa's male roommate, Curt, neither of whom she had seen before. Talk turned to the four going to lunch. Appellant claimed he was not properly dressed and asked the prosecutrix to bring his guitar to his apartment while he changed. He insisted she enter his apartment. Appellant then began to talk "dirty" to her like she was a prostitute. When Beverly and Curt arrived five minutes later, appellant pushed Beverly out the door saying the prosecutrix was going to stay. Appellant then twisted prosecutrix's arm behind her back and took off her clothes. He asked her to urinate on him, and offered her honey and fruit juices to drink, but she refused and he poured the honey and juices on her. He dragged her around on the carpet and then urinated in her mouth. Later he tried to force her to commit oral sodomy on him and placed his penis in her mouth. Beverly and Curt returned, but, according to the prosecutrix, they left when they saw what was going on. Later in the afternoon the appellant called the prosecutrix's boss and told him she could not return to work because of personal problems. The beatings continued. About 4 p.m. or so someone came to the door and the prosecutrix was ordered to the bedroom. She found her clothes,

dressed, and later broke out a window, kicked the screen off, and jumped from the second story apartment. Finding that Beverly had taken her car, she went to the manager's office and called her brother.

Beverly Villa testified the prosecutrix took her to her apartment on the date in question. After talking to Curt a few minutes, she entered the other bedroom and found appellant doing a head stand. The prosecutrix had her hands on his bare thighs. Later the prosecutrix and appellant went to his apartment for him to change for lunch. When Beverly later entered that apartment, she found the prosecutrix in appellant's bedroom in her bra and underwear, and the prosecutrix asked if she (Beverly) was "mad" at her. Beverly related the prosecutrix told her to go on to lunch with Curt, and that she and the appellant would join them later. She gave Beverly the keys to her (prosecutrix's) car. About an hour later, about 1:15 p.m., Beverly and Curt returned to appellant's apartment and found the appellant and the prosecutrix there nude. The prosecutrix told Beverly she didn't care to go back to work, to take her car and pick her up after work at appellant's apartment. She asked Beverly to make an excuse for her with her boss. Beverly demurred and the appellant agreed to call. When Beverly returned after work, she found the prosecutrix at the apartment manager's office.

Beverly related that the prosecutrix told her later she didn't want to file charges but was going to have to because of family pressures.

Beverly admitted appellant had spent the night before the alleged offense in her bed; that she had participated in orgies with the appellant.

The appellant testified that when the prosecutrix arrived at Beverly's apartment on the date in question, she began to follow him around, cuddled his thighs when he was doing a headstand. He related she followed him to his apartment, came into his bedroom when he was nude, commented on his physique for his age, stripped to her bra and underwear, and kissed and cuddled

him. When Beverly Villa and Curt arrived, the prosecutrix said she would stay with appellant unless he wanted to go to lunch. Beverly and Curt left. Appellant stated the prosecutrix took off her underwear and they lay nude on a bed while the prosecutrix told of her personal problems, her thoughts of suicide, etc. Appellant stated that with her consent he committed oral sodomy on the prosecutrix after she complained she had never had an orgasm. He denied he beat her, urinated on her, poured juices on her, etc. He denied he placed his penis in her mouth. Appellant related he called her boss after she gave him the telephone number as she wanted to spend the afternoon with him. Later in the afternoon appellant stated he laid on the bed and started to masturbate, that this angered the prosecutrix, that she felt degraded, and wouldn't accept his explanation about sexual honestness. Appellant stated the prosecutrix talked of suicide, and appeared with a piece of glass and threatened to cut her "pulse." Later she broke the window and left the apartment.

The State waived its opening argument to the jury. Appellant's counsel then argued that the State had failed to prove its case beyond a reasonable doubt, attacked the credibility of the prosecutrix and referred to the evidence she sought compensation through a lawyer. He stated, "Can you be satisfied with that because this is not the first time a young woman has filed a claim against a man she feels has a lot of money. Well, he's dead broke. The evidence is uncontroverted." Counsel then suggested that if she thought she had a claim she should have filed a civil lawsuit. Defense counsel then argued, "Nobody in their right mind is going to jump out the window unless their (sic) is somebody so terrible that you would do that, but if you put it into perspective with her history and her life she got some problems, but their claiming by reason of Eric Borgen she did this ...."

The prosecutor in his closing argument responded to the argument about the prosecutrix's credibility, and then concluded

with the argument in question. The only part of the argument claimed improper is the phrase, "... as long as lawyers are for hire, justice is for sale." It was obviously a throw-away phrase as it had no logical tie in with the facts or earlier argument. It was a general, vague, ambiguous reference to lawyers and the system of justice. It was not pursued. There was no objection by trial counsel and no motion for new trial was filed. On appeal for the first time different counsel urged appellant was denied due process of law by use of the phrase in oral argument, suggesting fundamental error in jury argument.

■ It is well settled that almost every right, constitutional and statutory, may be waived by the failure to object. For example, see *Dunavin v. State*, 611 S.W.2d 91 (Tex.Cr.App.1981) (a search case); *Nelson v. State*, 607 S.W.2d 554 (Tex.Cr.App.1980) (a search case); *Moulden v. State*, 576 S.W.2d 817 (Tex.Cr.App.1978) (confession case); and *Russell v. State*, 665 S.W.2d 771 (Tex.Cr.App.1983). As to "due process" and waiver thereof see *Crawford v. State*, 617 S.W.2d 925 (Tex.Cr.App.1981), and *Boulware v. State*, 542 S.W.2d 677 (Tex.Cr. App.1976). And now more recently see *Rogers v. State*, 640 S.W.2d 248 (Tex.Cr. App.1982) (probation revocation case).

■ Can it be said that the general rule that any impropriety in the State's argument is waived by the absence of a proper and timely objection, or the rule that "due process" claims can be waived as failure to object have no application in the instant case? Can it be said that the isolated use of the phrase in question was so prejudicial under the particular circumstances that both rules must give way? Even the Court of Appeals concluded the statement was "not as direct an attack upon defense counsel" as in *Bray* and *Lewis*.

The prosecutor's argument was improper, and the phrase should not have been used. We cannot conclude, however, in light of the record as a whole and without an objection, that the statement was so prejudicial as to call for reversal, or reflect a violation of due process of law. Unlike *Boyde*, this is not a case where even if a jury instruction to disregard had been requested and granted the prejudicial effect would not have been removed.

The judgment of the Court of Appeals is reversed, and the cause is remanded to that court for consideration of appellant's other grounds of error.

TEAGUE, J., concurs in the result.

ODOM, CLINTON and MILLER, JJ., dissent.