**Richard VASQUEZ ORONA, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–86–156–CR.**

Court of Appeals of Texas, Fort Worth.

Sept. 24, 1987.

Law Offices of Lane, Lane & Ware and Michael Logan Ware, Fort Worth (on appeal only), for appellant.

Tim Curry, Dist. Atty., and David L. Richards, Asst., Fort Worth, for the State.

Before FARRIS, KELTNER and LATTIMORE, JJ.

OPINION

KELTNER, Justice.

Richard Vasquez Orona appeals from his conviction by a jury of murder. The jury assessed punishment at ninety-nine years confinement in the Texas Department of Corrections. *See* TEX.PENAL CODE ANN. sec. 19.02 (Vernon 1974).

We affirm.

Appellant and Guadalupe Orona (the deceased victim) had been married approximately ten years. However, at the time of Guadalupe's murder, they were separated and in the process of divorcing.

On the morning of the offense, Guadalupe arose at her regular time and prepared for work at approximately 3:00 a.m. At the time, Guadalupe was living with her family. Oscar Galvan (the deceased's brother-in-law), testified that he was awake and watching t.v. when Guadalupe left the house. He testified that she left the house through the back door which led to a driveway area. Once Guadalupe was outside, Oscar heard her yell, "[N]o, Richard, no." Immediately after the outcry he heard two gunshots. Oscar testified that after hearing the shots, he went to his bedroom and got his rifle to defend his family. He then looked outside through a window, but he saw nothing.

Elvira Galvan (the deceased's sister), testified that she had been asleep when she was awakened by her sister screaming, "[N]o, Richard, no," followed by two gunshots.

Antonia Najar (the deceased's mother), testified that months before the shooting, appellant called Najar's house looking for Guadalupe. During that conversation, appellant told Najar that he had received the divorce papers filed by Guadalupe and he needed to talk with her to insure that he would get his fair share of the community property. Najar further testified that appellant told her that if Guadalupe did not call him, a lot of people were going to get hurt.

Anita Tijerina (the deceased's sister), testified that months before the shooting, appellant had told her that he was going to "beat the hell" out of Guadalupe because she wanted child support. However, soon thereafter, appellant and Guadalupe agreed on an amount for child support.

Jennifer Orona (daughter of the deceased and the appellant), testified that on the morning of the shooting, she was awakened by the screaming of Elvira. Jennifer testified that Elvira ran into Jennifer's room. Jennifer looked outside through a crack in the curtains and saw appellant outside. Jennifer testified that earlier that month, she witnessed Richard beat up her mother.

A medical examiner testified that Guadalupe died as a result of two gunshot wounds to the face. Officer J.V. Carter of the Fort Worth Police Department, testified that appellant voluntarily turned himself in five days after the shooting.

Appellant brings eight points of error.

In the first point of error, appellant contends there was insufficient evidence to support the judgment for murder.

In reviewing the sufficiency of the evidence in either a direct or circumstantial evidence case, we must view the evidence in the light most favorable to the prosecution and consider whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. State, 672 S.W.2d 801, 803 (Tex.Crim.App.1984); Houston v. State, 663 S.W.2d 455, 456 (Tex.Crim.App. 1984); Wilson v. State, 654 S.W.2d 465, 471 (Tex.Crim.App.1983) (opinion on reh'g). A conviction cannot be sustained if the evidence leaves any reasonable doubt as to the guilt of the accused. Jackson v. Virginia, 443 U.S. 307, 317–18, 99 S.Ct. 2781, 2788, 61 L.Ed.2d 560, 572–73 (1979).

■ Specifically, appellant argues that his "mere presence" at the scene of the crime, is alone insufficient to conclude that he committed the offense. This is a correct statement of the law. However, it is not applicable to this case. In the instant case, the evidence establishes that Guadalupe

died as a result of two gunshot wounds to her face. Jennifer, appellant's and Guadalupe's eleven-year-old daughter, testified she saw appellant at the crime scene seconds after the shooting. Two witnesses testified that seconds before the shooting, they heard Guadalupe yell, "[N]o, Richard, no."

In summary, one witness placed Orona at the scene, and other witnesses heard the shots and the victim's screams of "[N]o, Richard, no." Previously, appellant had threatened his victim. Even though no one witnessed the actual shooting, the evidence is sufficient to sustain the conviction. See Houston v. State, 667 S.W.2d 157, 160 (Tex.App.—Houston [14th Dist.] 1982, pet. ref'd) (circumstantial evidence held sufficient where one witness placed defendant at the crime scene when the shot was fired, even though he did not actually see the crime, and another witness heard a shot and saw the defendant shortly thereafter). The first point of error is overruled.

In his second point of error, appellant contends the trial court erred in overruling his objection to prejudicial argument of the State. Specifically, Orona objected to the following statement:

I am going to sit down here in a minute and after me the Defense is going to argue. I would caution you, ladies and gentlemen, that they are both very experienced Defense lawyers. They know how to argue to get people off the charges they are charged with.

The State concedes that the above quoted argument was improper. We agree and do not condone the prosecutor's argument.

■ The purpose of closing argument is to facilitate the jury in properly analyzing the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone and not on any fact or inference not admitted into evidence. Campbell v. State, 610 S.W.2d 754, 756 (Tex.Crim.App.1980).

■ However, an argument that exceeds the permissible bounds does not necessarily constitute reversible error, unless, in light of the record as a whole, the argument is

extreme or manifestly improper, is violative of a mandatory statute, or injects new facts harmful to the accused into the trial proceedings. *Mathews v. State*, 635 S.W.2d 532, 539 (Tex.Crim.App.1982); *see Bell v. State*, 614 S.W.2d 122 (Tex.Crim. App.1981).

 The test used by our courts to determine whether improper jury argument is harmless error, is not whether conviction could have been had without the improper argument, but whether there is a reasonable possibility that the argument complained of might have contributed to the conviction or punishment assessed. TEX. R.APP.P. 81(b)(2); *see also Garrett v. State*, 632 S.W.2d 350, 353–54 (Tex.Crim. App.1982). In other words, the question is whether the prosecutor's comment so infected the trial with unfairness as to make the resulting conviction a denial of due process. *Darden v. Wainwright*, 477 U.S. 187, ——, 106 S.Ct. 2464, 2472, 91 L.Ed.2d 144, 157 (1986). In making this determination, we must review the evidence at the guilt/innocence stage of the trial as well as that evidence adduced at the punishment stage. The summary of the evidence appears on our discussion of appellant's first point of error. However, it is noteworthy that the undisputed evidence demonstrated that one witness placed the appellant at the scene of the crime a second after it occurred, at 3:20 a.m. Two other witnesses heard the victim scream the appellant's name before the shooting. Additionally, Orona's prior threats of violence and actual violence against the victim were well documented in the record. This evidence, while circumstantial, is strong.

The jury assessed the maximum punishment allowed by law. At the punishment stage, two witnesses testified that the appellant had a bad reputation, but others testified his reputation as a law abiding citizen was good. The appellant took the stand, denied the murder and testified he was a born-again Christian seeking to make a new life. However, the jury was free to consider that the murder occurred in front of the deceased's family home and within hearing of her child. As a result, we cannot say that the State's argument contributed to Orona's length of imprisonment. *Saylor v. State*, 660 S.W.2d 822, 825 (Tex.Crim.App.1983).

However, nothing in this opinion should be construed as approval of the above quoted argument by the State. This argument is improper and might result in a reversal in another case with weaker prosecution facts.

In his third point of error, appellant contends the court erred in charging the jury pursuant to TEX.CODE CRIM.PROC. ANN. art. 37.07, sec. 4(a) (Vernon Supp. 1987), regarding good conduct time and parole. Appellant asserts that since article 37.07, section 4(a), provides that the instruction may only be given when the defendant is guilty of an offense listed in TEX.CODE CRIM.PROC.ANN. art. 42.12, sec. 3f(a)(1) (Vernon Supp.1987), or when the judgment contains an affirmative finding under section 3f(a)(2), the court erred in giving the instruction since there is no section 3f(a)(1) or 3f(a)(2) of article 42.12.

It has been previously held that the reference intended by the legislature in article 37.07, section 4(a), was meant to apply to article 42.12, section 3g(a)(1) and 3g(a)(2), rather than to 3f(a)(1) and 3f(a)(2). *See Shaw v. State*, 729 S.W.2d 134, 136 (Tex. App.—Fort Worth 1987, pet. granted); *Rose v. State*, 724 S.W.2d 832, 838–39 (Tex. App.—Dallas 1986, pet. granted).

As a result, we overrule the third point of error.

 In his fourth, fifth, sixth, seventh, and eighth points of error, appellant contends that article 37.07, section 4, is unconstitutional because: (1) it violated his right to due process under the United States and Texas Constitutions; (2) it constituted an ex post facto law violative of his rights under the United States and Texas Constitutions; and (3) it violated the separation of powers doctrine of the Texas Constitution.

This court has had occasion to consider identical attacks upon the constitutionality of this statute. *Shaw*, 729 S.W.2d at 135; *Patton v. State*, 717 S.W.2d 772, 780 (Tex. App.—Fort Worth 1986, pet. granted). In

each instance, this court has held article 37.07, section 4(a) to be constitutional in the face of attacks on grounds of violation of separation of powers doctrine and violations of due process clauses of the United States and Texas Constitutions, specifically holding in *Shaw* and *Patton,* that the statute is not an ex post facto law. *Id.* Appellant complains that the instruction authorized by the statute is so ambiguous as to violate his right to due process. In this regard, he urges us to accept Justice Hoyt's dissent in *Casares v. State,* 712 S.W.2d 818, 821 (Tex.App.—Houston [1st Dist.] 1986, pet. granted). However, the Dallas Court of Appeals has reached the opposite conclusion. *Rose,* 724 S.W.2d at 835–39.

Therefore, we overrule points of error four, five, six, seven, and eight.

We found no error in the trial court's proceedings, and affirm the trial court's judgment.