Stephen RAFFAELLI, Appellant,

v.

The STATE of Texas, Appellee.

No. 06–93–00062–CR.

Court of Appeals of Texas,
Texarkana.

Submitted July 7, 1994.

Argued July 21, 1994.

James E. Davis, Texarkana, for appellant.

Leon Pesek, Jr., Dist. Atty., Texarkana, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

Stephen Raffaelli appeals from a conviction for driving while intoxicated. A jury found Raffaelli guilty, assessed punishment at two years' imprisonment, probated, and a $2,000 fine.

Raffaelli contends that the trial court erred in ruling that the police legally stopped his vehicle, in admitting a videotape showing him exercising his right to remain silent, in refusing to grant a mistrial when the prosecutor argued outside the record, and in allowing the prosecutor to state that Raffaelli was represented by two well-paid attorneys.

Bowie County Sheriff's Deputy Joe Rochelle testified that he decided to stop Stephen Raffaelli after Raffaelli passed the deputy westbound on Interstate 30 and then weaved back and forth in his lane. Rochelle made the stop after Raffaelli exited onto Kings Highway in Nash, Texas, and proceeded at what the deputy called a "high rate of speed." Rochelle testified that Raffaelli fumbled for his driver's license, spoke with slurred speech, and staggered after leaving the car. Rochelle further stated that he smelled alcohol while speaking with Raffaelli.

Deputy David Cargile testified that he arrived on the scene, arrested Raffaelli, took him to the Bi–State Justice Building in Texarkana, and videotaped Raffaelli during the administration of several sobriety tests. The trial court allowed the jury to see the videotape over the defendant's objections.

Raffaelli testified that he had at least two beers with dinner at the house of Barnett Price, Jr. Price testified that he did not think that Raffaelli was intoxicated when he left Price's home.

During jury argument, the trial court sustained defense counsel's objection to the prosecutor's use of statistics regarding D.W.I., which were not presented into evidence, but the trial court refused to declare a mistrial on that basis. The trial court overruled defense counsel's objection to the prosecutor's statement that Raffaelli was represented by two well-paid attorneys.

### The Detention

Raffaelli first contends that the trial court erred in ruling that the initial stop of Raffaelli's vehicle was lawful. In *Stone v. State*, 703 S.W.2d 652, 654 (Tex.Crim.App. 1986), the court stated that:

An officer is permitted to make a temporary investigative detention of a defendant if the officer has a reasonable suspicion that some activity out of the ordinary is or has occurred, some suggestion to connect

the detainee with the unusual activity, and some indication that the activity is related to crime.

The type of reasonable suspicion required does not rise to the level of probable cause such as is required to justify a warrantless search or arrest. *Id.*

In the present case, Deputy Rochelle observed Raffaelli pass him on the interstate, weave back and forth in his lane, and, after exiting the interstate, Rochelle saw Raffaelli proceed at a high rate of speed. Rochelle stated that he made the decision to stop Raffaelli after the vehicle weaved back and forth. Raffaelli contends that these observations alone are not sufficient to provide Rochelle with a reasonable suspicion for the stop.

In *Miffleton v. State*, 728 S.W.2d 880 (Tex. App.—Austin 1987), *aff'd*, 777 S.W.2d 76 (Tex.Crim.App.1989), the court held that a reasonable suspicion existed based on the defendant's rapid acceleration, weaving, and excessive speed. In *Barraza v. State*, 733 S.W.2d 379 (Tex.App.—Austin 1987), *aff'd*, 790 S.W.2d 654 (Tex.Crim.App.1990), the court held that a reasonable suspicion existed when the officer observed the defendant weaving within his own lane and making two improper turns.

■ The activity observed by the officer does not have to amount to a crime in itself in order to justify an investigative detention. Rochelle's observation of Raffaelli weaving in his lane, although not an inherently illegal act, was sufficient to create a reasonable suspicion that some activity out of the ordinary was or had occurred, that Raffaelli had a connection to this activity, and that the activity was related to crime. Raffaelli's first point of error is overruled.

### The Videotape

■ Raffaelli next contends that the trial court erred in allowing the jury to see the post-arrest videotape. On appeal, Raffaelli argues that the videotape was inadmissible because it was the fruit of an illegal detention and because it showed Raffaelli exercising his right to remain silent.[1]

Raffaelli contends that his silence during a part of the tape was an exercise of his right to remain silent, and the prosecutor's showing the jury the videotape was the equivalent of telling the jury that he exercised his right. It is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he or she is under police interrogation. *Hardie v. State*, 807 S.W.2d 319, 322 (Tex. Crim.App.1991). The prosecution may not, therefore, use at trial the fact that the defendant stood silent or claimed his or her privilege in the face of accusation. *Id.*

In *Dumas v. State*, 812 S.W.2d 611 (Tex. App.—Dallas 1991, pet. ref'd), the court reversed a conviction because a videotaped interrogation shown to the jury revealed that the defendant had refused to waive his right to remain silent when given his *Miranda*[2] warnings. The court found this to be the effect of the tape even though the prosecutor, when showing the tape to the jury, turned down the volume after the *Miranda* warnings were given but during the defendant's refusal to waive his rights. *Id.* at 614. The court felt that the tape led the jury to the inescapable conclusion that the defendant had invoked his right to remain silent. *Id.;* see also *Jones v. State*, 742 S.W.2d 398, 401–02 (Tex.Crim.App.1987) (court held that the audio portion of a tape taken during a field sobriety test should not have been played to the jury because it revealed that the defendant requested an attorney); *Garner v. State*, 779 S.W.2d 498 (Tex.App.—Fort Worth 1989), *pet. ref'd*, 785 S.W.2d 158 (Tex. Crim.App.1990) (the court held that, when the defendant invoked his right to counsel during a videotaped interrogation, any oral statements made after that were inadmissible).

In the present case, the videotape shows Raffaelli attempting to cooperate at times but appearing to not even hear instructions or questions at other times. He alternately

---

1. Since we held, in response to the first point of error, that Raffaelli's detention was lawful, we need not address the illegal detention argument under this point of error.

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

performed sobriety tests and refused to perform, he understood and then did not understand, he spoke and then did not speak. When asked whether he understood certain questions, or just refused to answer, Raffaelli simply shrugged his shoulders. When asked if he understood his right to remain silent and his right to an attorney, Raffaelli said that he could not understand because he had a hearing problem. When again asked if he understood his right to remain silent and his right to an attorney, Raffaelli turned his ear toward the deputy as though he could not hear the question. He again turned his head when asked if he had operated a motor vehicle. He then appeared to use his finger to clean out his ears. When Deputy Cargile asked him to read along, Raffaelli stated that he could not do so without his glasses. Later, Raffaelli asked the deputy to repeat something louder because he did not hear it.

Unlike the *Dumas* case, wherein the court held that it was an inescapable conclusion that the defendant invoked his right to remain silent, Raffaelli's silence in the present case was clearly part of a series of words and actions that resulted either from a hearing problem or from Raffaelli's desire to appear to have a hearing problem. The impression left by the tape is that Raffaelli remained silent because he did not understand or because he wanted the deputy to think he did not understand the deputy's questions. Nowhere on the tape does Raffaelli verbally state that he wants to exercise his constitutional right to remain silent, and his actions and inaction cannot be construed to be an exercise of this right.

■ The audio portion of a videotape made in a custodial setting is admissible only where it does not include compelled testimony resulting from interrogation. *Miffleton v. State,* 777 S.W.2d 76 (Tex.Cr.App.1989). A police request to perform sobriety tests and directions on how to do the tests do not constitute interrogation; neither do queries concerning a suspect's understanding of his rights. *Jones v. State,* 795 S.W.2d 171 (Tex. Crim.App.1990). Officer Cargile asked only one question which could be construed as an interrogation-type question, i.e., when he asked Raffaelli if he had driven a vehicle.

Raffaelli did not answer this question, and during his testimony, he admitted driving the car. Furthermore, Raffaelli does not argue that the videotape is inadmissible due to any perceived comments or interrogation, except the exercising of his constitutional right to remain silent in response to any questions. As discussed above, his failure to answer the question did not appear in any way to be in conjunction with his constitutional rights but rather was based upon his failure to hear the question. Raffaelli's second point of error is overruled.

### Jury Argument

■ Raffaelli next contends that the trial court erred in not granting a mistrial when the prosecutor argued outside the record regarding D.W.I. statistics. During jury argument, the prosecutor stated:

> [Defense counsel] seemed to indicate that this was a victimless crime, that no real harm was done. Lost loved ones and high insurance premiums are the direct result of D.W.I. The statistics concerning D.W.I. are staggering. Ladies and gentlemen, an individual who has consumed enough alcohol to be intoxicated is seven times more likely to be involved in an accident. Every year—every year, approximately twenty-five thousand people in our country....

At this point, defense counsel objected that these statements were predicated on statistics that were not in the record. The trial court sustained the objection and instructed the jury that it was not to consider the statistics in its deliberations. But the trial court refused to grant a requested mistrial.

■ Generally, a trial court's admonition to a jury that it could not consider jury argument on matters not in evidence is considered sufficient to cure the error. *See, e.g., Thomas v. State,* 811 S.W.2d 201 (Tex.App.— Houston [1st Dist.] 1991, pet. ref'd); *Norris v. State,* 788 S.W.2d 65 (Tex.App.—Dallas 1990, pet. ref'd). We also note that, in the present case, the statistics used by the prosecutor did not directly relate to Raffaelli's guilt, but spoke instead to the seriousness of the crime charged.

We hold that the trial court's instruction to disregard the prosecutor's statements in the present case cured any error. Raffaelli's third point of error is overruled.

■ Raffaelli next contends that the court erred in allowing the prosecutor, over objection, to state that the defendant was represented by two well-paid attorneys. During jury argument, the prosecutor stated that "[t]his defendant comes in to trial with some well-paid, well-compensated counsel, and that's his right to do so." At which point, defense counsel made an objection which the trial court overruled. The prosecutor then started his next sentence with "[w]ell-compensated counsel," and again an objection was raised and overruled. The prosecutor then continued:

> [W]ell-compensated counsel, ladies and gentlemen, and there's nothing wrong with that. To be well-represented; there is absolutely nothing wrong with that. But the fact of the matter is, that doesn't mean that he's less guilty because of it. He has to live by the same laws that we all do.

Raffaelli contends that the prosecutor's statements were outside the record and prejudicial. In *Borgen v. State*, 672 S.W.2d 456 (Tex.Crim.App.1984), the court held that the following phrase was improper jury argument: "as long as lawyers are for hire, justice is for sale." Likewise, in *Reynolds v. State*, 848 S.W.2d 785 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd), the court held that references to defense counsel as being "slick" or "smart" were improper. We find that the prosecutor's statements in the present case were outside the record and improper.

■ A case should be reversed because of trial error unless the reviewing court determines beyond a reasonable doubt that the error did not contribute to the conviction or the punishment. Tex.R.App.P. 81(b)(2). In cases where strong evidence was presented establishing the defendant's guilt, courts have frequently held a prosecutor's disparaging references to defense counsel or defense tactics to be harmless error. *See, e.g., Adams v. United States*, 347 F.2d 665 (5th Cir.1965), *cert. denied*, 382 U.S. 975,

86 S.Ct. 540, 15 L.Ed.2d 466 (1966) (defense counsel's opinions were bought and paid for); *Hurd v. State*, 513 S.W.2d 936 (Tex.Crim. App.1974) ("manipulator"); *Spencer v. State*, 466 S.W.2d 749 (Tex.Crim.App.1971) (defense counsel did not want justice done); *Reynolds*, 848 S.W.2d 785 ("slick" and "smart"); *Orona v. State*, 737 S.W.2d 432 (Tex.App.—Fort Worth 1987), *rev. granted, affirmed in part, remanded in part*, 791 S.W.2d 125 (Tex. Crim.App.1990) (defense attorneys "know how to argue to get people off the charges they are charged with").

In the present case, the challenged remarks do not allege anything improper on the part of defense counsel, and the testimony by the two sheriff's deputies in the present case strongly supports a finding of guilt. Counsel argues that the fact that the fine was set at the maximum demonstrates the harm caused by the trial court error. The argument was made during the guilt/innocence phase of the trial. The thrust of the argument was that the defendant was not to be treated any differently because of his ability to afford counsel. The trial judge had already instructed the jurors that they were to disregard anything that was not in evidence. We find beyond a reasonable doubt that these comments could not contribute to the conviction or the punishment in this case. We find the trial court's error to be harmless. Raffaelli's fourth point of error is, therefore, overruled.

The trial court's judgment is affirmed.

BLEIL, Justice, dissenting.

I differ with the majority in its treatment of the prosecutor's highly improper jury argument. I feel as the court of criminal appeals in an earlier case must have in discussing improper prosecutorial conduct. It said, "We fail to understand just why a prosecuting attorney would depart from the well-established rules requiring that arguments be based upon evidence legally introduced in the case." *Summers v. State*, 147 Tex.Crim. 519, 182 S.W.2d 720, 721 (1944).

Here, when the prosecutor first argued outside the record, the trial court sustained the defense objection and instructed the jury to disregard. We hold the instruction cured

the error caused by the improper argument. When the prosecutor second argued outside the record and essentially told the jury not to be fooled because Raffaelli had high-priced lawyers, the trial court *overruled* the objection. Thus, because none was given, we cannot conclude that an instruction to disregard cured the error caused by the improper argument. In actuality, the court's overruling of the objection told the jury to consider the improper argument. I decline to join the majority's determination that, beyond a reasonable doubt, the improper argument and erroneous trial court ruling did not contribute to the conviction or punishment under Texas Rule of Appellate Procedure 81(b)(2).

Moreover, I decline to join in the majority's decision for a further reason. In ruling on the harmfulness of errors committed by the prosecutor, we should consider whether declaring the error harmless will encourage the prosecutor to repeat the error with impunity. *Harris v. State,* 790 S.W.2d 568, 587 (Tex.Crim.App.1989). The majority's decision gives prosecutors a signal to go ahead and violate well-established rules. I would hold this error harmful in hopes that next time the prosecutor might be inclined to properly argue the case.

For these reasons, I dissent.

Additionally, I decline to join in that portion of the majority's opinion which discusses the audio portion of the visual recording offered into evidence. Although no point of error is directed specifically to it, there were many editorial remarks and comments by the officer in charge concerning Raffaelli himself and his actions during the course of the visual recording. The visual recording mandated by Article 6701*l*–1 does not contemplate that such remarks and comments will be presented to the fact finder. Tex.Rev.Civ. Stat.Ann. art. 6701*l*–1 (Vernon Supp.1994). Neither the *Miffleton* decision nor the *Jones* decision, cited by the majority, approve the use of such comments on the audio recording. In fact, the more recent *Jones* decision twice emphasizes that the officer giving the test in that case *made no comments* other than those necessary to inform Jones of her rights and to instruct her. *Jones v. State,* 795 S.W.2d 171, 176 (Tex.Crim.App.1990). The majority's discussion of the audio portion of the visual recording might be construed as holding that the comments and remarks of the officer throughout were admissible because they did not seek to compel incriminating testimony from Raffaelli. Therefore, I decline to agree with that part of the majority's opinion.