Debbie REYNOLDS, Appellant,

v.

The STATE of Texas, Appellee.

No. A14–92–00109–CR.

Court of Appeals of Texas, Houston (14th Dist.).

Feb. 4, 1993.

Discretionary Review Refused May 5, 1993.

Stanley G. Schneider, Houston, for appellant.

Scott A. Durfee, Asst. Dist. Atty., Houston, for appellee.

Before J. CURTISS BROWN, C.J., and ELLIS and LEE, JJ.

## OPINION

ELLIS, Justice.

Appellant, Debbie Reynolds, appeals her judgment of conviction for the offense of murder. TEX.PENAL CODE ANN. § 19.02(a)(2) (Vernon 1989). The jury rejected appellant's not guilty plea and assessed punishment at thirty-two years (32) confinement in the Institutional Division of the Texas Department of Criminal Justice. We affirm.

On September 12, 1991, around 6:00 p.m. appellant called her ex-husband Darrell Crapo from a pay phone to ask him for a ride. She was obviously upset and stated that she could not spend another night with her live-in boyfriend, Mark Larose, because he was "killing" her. Crapo agreed to pick her up at 9:00 p.m. An eyewitness to this telephone conversation reported that appellant was wearing shorts and a stained shirt and had no bruises or marks on her body.

Immediately after this phone conversation, around 6:15 p.m. appellant visited her neighbor, Jessie Lackey. She told Lackey that she and Larose had been in an argument and asked Lackey to help her move some things out of her apartment. She also stated that she had "knocked Mark in the head and left him for dead." Not wanting to get involved in her problems, and not believing what she had just said, Lackey asked appellant to bring her things from out of her apartment. Arriving at the apartments around 9:30 p.m., Crapo found appellant calm and sober. She was sitting on the steps with her things. He did not observe any cuts or bruises on appellant. He took appellant to a center for women.

The next day, September 13th, Lackey noticed that Larose had not come out of his apartment as he usually did. Lackey left for work and afterwards went to a baseball game but left early to check on Larose. When he didn't get an answer when he knocked on Larose's door, Lackey called the police. Officer Charles Edge of the Baytown Police Department responded to the call. Both Edge and another officer entered and looked around the apartment. Smelling the odor of a dead person, they searched the apartment and found a large amount of blood and a dead body. They also discovered an extremely sharp ten-inch fish fillet knife.

On September 16, 1992, Darrell Crapo met with Detective Amato of the Baytown Police Department and indicated that appellant may have been involved in the murder of Mark Larose. Amato later arrested appellant. Although she gave a statement outlining her involvement in Larose's death, she said that she stabbed him in self-defense. She maintained that Larose had tried to choke her. The officer taking the statement also did not observe any marks or bruises on appellant.

The medical examiner's report stated that Larose had died of a cut jugular vein. His blood alcohol level was 0.311 and his cerebrospinal fluid alcohol level was 0.426. At trial, the medical examiner testified that these levels are indicative of an intoxication level at which persons have difficulty walking or standing. He also testified that Larose's wounds were inconsistent with appellant's claim of self-defense. He said these wounds were more consistent with stabbing him from behind while he was standing, seated, or laying down. During

trial, appellant admitted stabbing Larose with the fish fillet knife.

■ In her first point of error, appellant contends that the trial court erred in overruling her objection to the state's "do you know" question. During the punishment phase of trial, appellant called Nancy Manuel, her aunt, to testify as an opinion witness on appellant's character. After Manuel stated that she had known appellant all her life, appellant adduced the following evidence:

Q. Are you asking the jury to consider mercy in this case?

A. Yes, I am.

Q. Do you know of any other violence that Ms. Reynolds has ever committed to your knowledge?

A. No.

On cross-examination, the State asked the following question, of which appellant now complains:

Q. *Did you know that Debbie Reynolds had previously stabbed her ex-husband while he had his back turned to her when they were married? Did you know that?*

[DEFENSE COUNSEL]: I object to this question, unproved conduct. It's highly prejudicial, outweighs any kind of probative value. It's improper for the State to make that statement.

[THE COURT]: Objection is overruled. You may answer that, if you can.

■ "Do you know" questions are permissible under TEX.R.CRIM.EVID. 405(a) and 404(a)(1). Rule 404(a)(1) now allows an accused to offer general reputation or opinion testimony to prove character. *Thomas v. State*, 759 S.W.2d 449, 452 (Tex.App.— Houston [14th Dist.] 1988, pet. ref'd). However, the old general limits on cross-examination still apply. Specifically, while reputation witnesses are asked "have you heard" questions, opinion witnesses are asked "do you know" questions. *Id.* The exception to this rule is where a witness "converts himself from a reputation witness to an opinion witness and vice versa." *Id.* The rationale is that reputation witnesses may be asked "have you heard"

questions in order to test the weight of their testimony. *Id.* Opinion witnesses are asked "do you know" questions to test the basis of their personal opinions. *Id.*

■ TEX.R.CRIM.EVID. 405(a) also allows "do you know" questions to be asked of opinion witnesses. Rule 405(a) states that "[i]n all cases where testimony is admitted under this rule, on cross-examination inquiry is allowable into relevant specific instances of conduct." *See Lancaster v. State*, 754 S.W.2d 493, 495 (Tex.Civ.App.— Dallas 1988, pet. ref'd). However, the "right to cross-examine a character witness on specific instances of a defendant's conduct is subject to two limitations: first, there must be some factual basis for the incidents inquired about; and second, those incidents must be relevant to character traits at issue in the trial." *Id.* at 496. The foundation for inquiring into the specific instances of conduct must be laid outside the jury's presence.

Although appellant complains that the State failed to show a factual basis for the proffered "do you know" question, she does not complain of its relevancy. Appellant maintains that the question was "insufficiently grounded in fact" and was nothing more than an unsubstantiated claim. Thus, she complains that there was no factual basis for the proffer of this question. Her contention is without merit because the State laid a factual predicate for proffering this question to Ms. Manuel. It did so through the proffer of the sworn testimony of Darrell Crapo.

During the guilt-innocence phase of trial, the State offered, outside the presence of the jury, the testimony of Darrell Crapo. This testimony revealed that appellant had tried to stab Mr. Crapo on three separate occasions with a serrated steak knife and that she had actually stabbed him in his behind with a cooking fork. The judge excluded this evidence from the guilt-innocence phase of trial ruling that its probative value was substantially outweighed by the danger of unfair prejudice. Such evidence went to appellant's violent tendencies. While obviously relevant, it also served to lay a proper factual predicate for

the proffer of a "did you know" question to Ms. Manuel. The function of the "factual basis" rule is to provide trial and appellate courts with a test for determining whether a prosecutor's "have you heard" or "do you know" question was asked in good faith. Because the proffered testimony of Darrell Crapo meets that standard, appellant's first point of error is overruled.

In her second point of error, appellant asserts that the evidence is factually insufficient to sustain her conviction because the rejection of her self-defense claim was so against the weight of the evidence as to be manifestly unjust. While appellant makes this contention, she concedes that the evidence is legally sufficient to disprove her claim of self-defense. Appellant's employment· of the factual insufficiency standard is in error.

This Court has routinely held that the factual insufficiency standard is inappropriate for reviewing sufficiency of the elements of the offense. *See, e.g., Richard v. State,* 830 S.W.2d 208, 213–14 (Tex.App.—Houston [14th Dist.] 1992, pet. ref'd); *Brown v. State,* 804 S.W.2d 566, 570 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd); *Gaynor v. State,* 788 S.W.2d 95, 97–98 (Tex.App.—Houston [14th Dist.] 1990, pet. ref'd). Other courts have concurred. *See Blackmon v. State,* 830 S.W.2d 711, 713 n. 1 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd); *Moody v. State,* 830 S.W.2d 698, 704 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd).

Even more specific to the standard of review for a self-defense claim is the cases of *Mason* and *Moody.* This Court held in *Mason* that the issue of self-defense is not one that gives rise to a factual sufficiency review. *Mason v. State,* 798 S.W.2d 854, 857 (Tex.Civ.App.—Houston [14th Dist.] 1990, no pet.). This is because "self-defense is [not] an issue upon which the State bears the burden of proof." *Moody v. State, supra* at 704. We find that appellant has invoked the improper standard for reviewing the sufficiency of the elements of the offense. Appellant's second point of error is overruled.

◼ In her third point of error, appellant complains that the trial court erred in overruling her motion for instructed verdict. She contends that the State failed to disprove her claim of self-defense beyond a reasonable doubt. Attacks on a trial court's denial of a motion for instructed verdict are attacks on the legal sufficiency of the evidence. *Madden v. State,* 799 S.W.2d 683, 686 (Tex.Crim.App.1990). As appellant has conceded the legal sufficiency of the evidence, her third point of error is overruled.

◼ In her fourth point of error, appellant complains that the trial court erred in overruling her objection to the State's argument characterizing her attorney as "slick" and "smart." Appellant has failed to preserve error for the State's characterization of "slick" and has also failed to show that the argument was either erroneous or harmful.

Appellant's trial counsel characterized Mark Larose as "drunk as a skunk" and "blitzed". He also said that when intoxicated, Larose becomes "obnoxious" and "capable of doing things [he] would never do under normal circumstances." The first argument of which appellant complains is the State's comment that:

> Thank you, Judge. You know, as I sit back and listen to those kind of arguments I can't help but think, what if Mark Larose could hear and have seen what went on in this court? What might he think or what might he do. And I can't help but think that he would come right through these doors and come over here and say no. No. My whole life has been trashed, and I can't even come into this court and tell you what happened. So, he's got to rely on some young D.A. to find all the evidence, to find all these witnesses to come on and try to piece it back together and make sure that justice is going to be done because otherwise a *slick* defense attorney could come up here—
>
> [DEFENSE COUNSEL]: I object, Your Honor. This is striking at my client over the shoulders of her attorney, and I object to this line of argument.

[THE COURT]: Argue your case. Stay in the record. Argue your case, but stay in the record.

The above dialogue shows that appellant has failed to preserve error for our review. Appellant failed to preserve error by failing to procure a ruling and by failing to request a mistrial. *Nastu v. State*, 589 S.W.2d 434, 441 (Tex.Crim.App.1979), *cert. denied*, 447 U.S. 911, 100 S.Ct. 3000, 64 L.Ed.2d 862 (1980); *Moore v. State*, 658 S.W.2d 312, 316 (Tex.App.—Houston [1st Dist.] 1983, pet. ref'd). The trial court's instruction to "stay in the record" was not an adverse ruling. *Graham v. State*, 566 S.W.2d 941, 954 (Tex.Crim.App.1978). Thus, the only contention which is properly before this Court is the argument characterizing appellant's trial counsel as "smart."

■ The second argument of which appellant complains is the State's argument that:

Now, there is not one shred of evidence in this case, ... not one witness that ever said that Ms. Reynolds was mistreated by Mr. Larose. No witnesses, no police officers, no offense report, nobody from the women's center. I mean, *don't think that Mr. Mitcham is not smart enough to bring somebody from the women's center if there was somebody out there.*

[DEFENSE COUNSEL]: I object. Again, he [sic] striking at the defendant over the shoulders of her attorney, and I object to that.

[THE COURT]: Overruled, Counsel. Continue arguments.

This argument was proper because the State may properly comment on a defendant's failure to call competent and material witnesses. The State may also argue that the reason for such failure is that the testimony would be unfavorable to the defense. *See e.g.,* *O'Bryan v. State*, 591 S.W.2d 464, 479 (Tex.Crim.App.1979), *cert. denied*, 446 U.S. 988, 100 S.Ct. 2975, 64 L.Ed.2d 846 (1979); *Carrillo v. State*, 566 S.W.2d 902, 912 (Tex.Crim.App.1978); *Parker v. State*, 792 S.W.2d 795, 801–02 (Tex. App.—Houston [14th Dist.] 1990, pet.

ref'd). The State was merely arguing that if a witness was absent, it was not due to neglect or lack of skill on the part of appellant's trial counsel. Rather, if witnesses were available, appellant's counsel was smart enough to bring them in from the women's center to testify as to anything favorable to appellant. The State was not striking at appellant over the shoulders of her counsel.

■ Moreover, even if either argument was error, it was not error requiring reversal. The State's characterizations of "slick" and "smart" simply do not rise to a level requiring reversal. Any error arising from this argument was of a nature that was harmless beyond a reasonable doubt. Tex.R.App.P. 81(b)(2). Appellant's fourth point of error is overruled.

In her fifth point of error, appellant complains that the State's comment regarding appellant's request for the lesser included offense of voluntary manslaughter was improper. It is the following argument of which appellant complains:

Now, real brief, before I forget about it, we need to talk about voluntary manslaughter. And voluntary manslaughter, basically in the charge it talks about it's the same thing as killing somebody, but she caused the death under the immediate influence of sudden passion arising from adequate cause. Okay.

*Now, I'm going to tell you something right now. I didn't request this charge. Mr. Mitcham did.*

[DEFENSE COUNSEL]: I object, Your Honor. That's outside the record.

[THE COURT]: Stay in the record, please. Argue your case. But they have the law.

[DEFENSE COUNSEL]: We would ask for an instruction for the jury to disregard.

[THE COURT]: Completely disregard the last statement of the D.A., and you're not to consider it for any purpose whatsoever, ladies and gentlemen.

[DEFENSE COUNSEL]: And we would ask for a mistrial.

[THE COURT]: Motion for mistrial is overruled and denied. Continue your arguments. Stay in the record.

[STATE]: Yes, sir. The State does not want you to find her guilty of voluntary manslaughter because the evidence shows that she's guilty of murder. But I need to tell y'all what it is because you might go back there and say, well, let's compromise and do this. And I'm telling you, do not do it. Don't do it.

█ Appellant has failed to preserve error by failing to procure a ruling on her objection. Again, the judge's warning to "stay in the record" was not a conclusory ruling. Moreover, appellant's objection that the argument was outside the record fundamentally differs from the point of error urged on appeal. Her point of error on appeal maintains that the State erred by referring to her request for the lesser offense of voluntary manslaughter. *See* Tex. Code Crim.Proc.Ann. art. 36.15 (Vernon Supp.1992). An objection expressing a different legal ground from that urged on appeal may not be reviewed. *Johnson v. State*, 803 S.W.2d 272, 292 (Tex.Crim.App. 1990).

█ Even if we were to assume that this issue was both properly preserved, and that the State's argument was error, the error would not be one requiring reversal. Error is not reversible unless, in light of the record as a whole, the argument is extreme or manifestly improper, violative of a mandatory statute, or injects new facts which are harmful to the accused into the trial. *Mathews v. State*, 635 S.W.2d 532, 539–40 (Tex.Crim.App.1982); *Vineyard v. State*, 96 Tex.Crim. 401, 257 S.W. 548 (1922). To assess whether jury argument is manifestly improper or whether the argument injected some harmful new fact into the case, it is necessary to determine its probable effect on the jury. *Mathews*, 635 S.W.2d at 540; *Landry v. State*, 706 S.W.2d 105, 110 (Tex.Crim.App.1985).

█ After the State's argument, the trial court strongly instructed the jury to "completely disregard" this argument. Such an instruction generally serves to cure any error committed by the argument.

*Audujo v. State*, 755 S.W.2d 138, 144 (Tex. Crim.App.1988). In addition, because there was compelling evidence presented by the State, the statement's effect was likely de minimis. In the instant case, the State presented evidence that it was "highly improbable" that the death was caused as appellant described. Indeed, the evidence showed that death was more consistent with a cold-blooded attack from behind than an assault necessitated by self-defense. In light of this overwhelming evidence, the argument if error, was harmless. Tex.R.App.P. 81(b)(2). *See Witt v. State*, 745 S.W.2d 472, 475 (Tex.App.— Houston [1st Dist.] 1988, pet. ref'd). Lastly, the State's argument was an "unguarded comment" which was promptly corrected. *See Mathews*, 635 S.W.2d at 540. Such comments are not a basis for reversal. Moreover, the Texas Court of Criminal Appeals has held that "[w]e do not regard a reference by counsel for the state, in his jury argument, to the fact that the charge included special charges requested by the defense as a violation of a mandatory statute." *Roach v. State*, 440 S.W.2d 72, 74 (Tex.Crim.App.1968). Appellant's fifth point of error is overruled.

█ Appellant's sixth point of error complains of the admission of Joey Oyler's testimony concerning his opinion that Larose was not a violent man. Appellant complains of the following testimony from Joey Oyler during direct examination by the State:

Q. Did you ever go drinking with Mark Larose? Did you ever see him drink beer, drink alcohol?

A. Sure.

Q. And would you say that sometimes he would drink too much?

A. Yeah, probably so.

Q. Did you ever know him to be a violent person when he drank?

A. No.

Q. Did you ever know him to drink alcohol or drink too much alcohol, even get drunk and get into fights or especially attack women?

A. No, never saw him do anything like that.

Q. Have you ever heard of him doing something like that?

A. No, I haven't.

Q. Was Mark Larose the type of person that when he gets—when he gets drunk that he might grab hold of a 5′ tall woman that weighed 80 pounds and try to strangle her to death? Could you ever envision something like that?

A. No, sir.

[DEFENSE COUNSEL]: Objection. This calls for speculation on the part of this witness.

[THE COURT]: It's overruled, Counsel.

Q. Could you ever envision him doing that, no matter how drunk he was?

A. No, sir, I couldn't.

■ Appellant has failed to preserve error. First, appellant's objection was not timely because it did not come until after the witness completed his answer. *Girndt v. State*, 623 S.W.2d 930, 934–35 (Tex.Crim. App.1981); *Hunter v. State*, 799 S.W.2d 356, 359 (Tex.App.—Houston [14th Dist.] 1990, no pet.). Second, appellant did not object to similar testimony both prior to and after, the question of which she objected. The law requires one to object every time inadmissible evidence is introduced. *See Johnson v. State*, 803 S.W.2d 272, 291 (Tex.Crim.App.1990); *Hudson v. State*, 675 S.W.2d 507, 511 (Tex.Crim.App.1984).

■ Even if we were to assume that appellant had preserved error, the proper predicate had been laid for Oyler to state his opinion because appellant had attacked Larose's character and had offered evidence that he was the first aggressor. Oyler had also seen Larose intoxicated but had never seen him become violent. *See* TEX.R.CRIM.EVID. 404(a)(2) and 701. Under TEX.R.CRIM.EVID. 404(a)(2), evidence of a victim's character is admissible to rebut evidence of a pertinent trait of the victim's character or to rebut any evidence that the victim was the first aggressor. Appellant's sixth point of error is overruled.

Accordingly, the judgment of the trial court is affirmed.