Dismiss WOJ 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-97-302-CR

     LESLIE WAYNE CHAPMAN,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the 77th District Court
Limestone County, Texas
Trial Court # 8810-A
                                                                                                                

MEMORANDUM OPINION 
                                                                                                                

      According to the clerk’s record filed in this cause, Appellant Leslie Wayne Chapman pled
guilty to the offense of theft of a firearm. See Tex. Pen. Code Ann. § 31.03(e)(4)(C) (Vernon
Supp. 1997). On August 19, 1997, the court sentenced Chapman to one year’s confinement in the
State Jail Division of the Texas Department of Criminal Justice, pursuant to the State’s plea
recommendation.
      The clerk’s record reflects that Chapman did not file a motion for new trial. He filed a pro
se notice of appeal on November 12, eighty-five days after the court imposed his sentence. Thus,
his notice of appeal is untimely.


 See Tex. R. App. P. 26.2(a)(1); Rodarte v. State, 860 S.W.2d
108, 110 (Tex. Crim. App. 1993). Because Chapman did not timely file his notice of appeal, we
lack jurisdiction over the appeal. Id. Accordingly, we dismiss the appeal for want of jurisdiction.
                                                                               PER CURIAM

Before Chief Justice Davis, 
            Justice Cummings, and
            Justice Vance
Dismissed for want of jurisdiction
Opinion delivered and filed November 26, 1997
Do not publish



 0.388889in">      Judge Allen, after first expressing his opinion that under these circumstances evidence of the
extraneous offenses was inadmissible, invited the state to demonstrate in camera what evidence
it would seek to introduce. The state, accordingly, outside the jury's presence, asked York what
was her opinion of Thompson as a peaceful and law-abiding citizen, to which she responded that,
aside from the charges to which he had plead guilty, he is peaceful and law-abiding. The state
then asked her whether she was aware that Thompson had been accused of several other acts of
molesting children other than the victim in the instant case. Thompson objected on the grounds
that the extraneous offenses were unadjudicated and, therefore, inadmissible under Grunsfeld v.
State, 843 S.W.2d 521 (Tex. Crim. App. 1992). Judge Allen, declining to rule at that moment,
replied that he would carry Thompson's objection.
      The state then asked York whether she was aware that all of Thompson's accusers were
related to him. She replied that she was. Upon being informed by the state that it would not seek
to ask any further questions, Judge Allen ruled that the state would be precluded from asking any
questions about the extraneous offenses.
      Following the in camera hearing, the state chose not to ask the witness any further questions. 
Thompson then started to cross-examine York, but before he could present any questions, Judge
Allen called the parties back into his chambers to warn them that, due to the state of the record,
Thompson was on the verge of opening the door for the prosecution to begin asking "Have you
heard" questions. Upon returning to the courtroom, Thompson decided not to ask York any
questions.
      After two more witnesses offered testimony, one from the state and one from the defense,
Thompson called a friend, Will Veazy, to testify on his behalf. The following colloquy occurred:
Q. How long have you known Nonie Thompson?
 
A. It's been around thirty years.
 
Q. How do you know him? How well do you know him?
 
A. Well, we've been pretty good friends for the last ten or twelve years.
 
Q. So you've known him better in the last ten or twelve years --
 
A. I have.
 
Q. -- than in the first twenty?
 
A. Yeah.
 
Q. Based on your personal experiences and knowledge of Mr. Thompson, do you
have an opinion about his character as a peaceful and law-abiding citizen?
 
A. I do.
 
Q. What is that opinion?
 
A. Well, I think he's a Christian man, and I think he wants to do what's right with
the law.
 
Q. Is he peaceful?
 
A. What time I'm around him, he's always peaceful.
 
Q. Is he law-abiding?
 
A. I would think so.
 
Q. Pass the witness.
 
      The state then approached the bench. Outside the presence of the jury the state informed the
court that it had been told by one of Thompson's other daughters, Jamie Wilson, that he had
molested several children, including Janice Wilson, Rita York, and other children named Gina,
Tammy Kay, Sandra, and Christi; the state then conveyed its desire to ask questions concerning
these allegations.
      Before the court responded, Thompson's counsel argued, "Your honor, this man can only
testify to facts that he knows about. It would be highly prejudicial to ask questions [on the
accusations against Thompson of child molestation] and, if he doesn't know anything, those
questions should not be asked before the jury."
      The court ruled, "He can ask the questions. He can ask the 'Have you heard' questions, and
the witness can either answer or not answer them, but be careful how you ask them. You know,
'Have you heard.'"
      The state responded, "Yes, sir." Nothing further was mentioned on behalf of the defense. 
Upon returning to the courtroom, the state, in the jury's presence, asked Veazy if he had heard
that Thompson had sexually molested the several people named above. The defense lodged no
objection when the questions were asked. When the state completed asking the "Have you heard"
questions, Veazy testified, in response to a question asked by the state, that his knowledge of this
information would not change his opinion of Thompson as a peaceful and law-abiding citizen.
      In order to preserve a complaint for appellate review, a party must present to the trial court
a timely objection and receive a ruling on that objection. Tex. R. App. P. 52(a); Ethington v.
State, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). Furthermore, the objection made at trial
must be on specific grounds and for the same error alleged on appeal. Tex. R. App. P. 52(a);
Mooney v. State, 817 S.W.2d 693, 703 (Tex. Crim. App. 1991). The following questions are
before us: first, whether Thompson presented to Judge Allen a timely objection to the state's use
of "Have you heard" questions; second, whether Thompson's objection in camera served as a
timely objection in trial; and third, whether his objection at trial was the same as his argument on
appeal.
      The state notified the court that it wished to ask a witness questions about some accusations
made against Thompson that he had molested several children. Before the court responded,
Thompson argued that the questions should not be asked. The trial court then ruled the questions
could be asked in the "Have you heard" form. We find that Thompson, by stating his opposition
to a proposal by the prosecution and arguing against it, lodged a timely objection despite never
specifically informing the court that he intended to object. See Nunfio v. State, 808 S.W.2d 482,
484 (Tex. Crim. App. 1991).
      The state argues that even if Thompson lodged a timely objection during the in camera
hearing, he waived error by failing to object when the "Have you heard" questions were asked
before the jury. "When the court, out of the jury's presence, hears and overrules objections to
evidence, those objections need not again be made before the jury when the evidence actually is
presented to the jury." Ethington, 819 S.W.2d at 858. This same rule of law applies to the facts
of the instant case where the defense made a timely objection outside the jury's presence to the
state's request to question a witness about extraneous offenses allegedly committed by the
defendant and where the questions are subsequently asked before the jury without objection.
      The state argues further that, even if Thompson lodged a timely objection, the complaint he
asserts on appeal differs from the one for which he complained at trial. We agree. When he first
learned of the state's intention to ask the "Have you heard" questions, Thompson argued that they
could not be asked because, among other things, the substance of the extraneous offenses was
outside Veazy's knowledge. On appeal Thompson asserts his objection at trial encompassed the
argument that the form of the questions was improper. This, however, is not an argument the trial
court could have understood Thompson to have intended to make when he voiced his objection. 
See Lankston v. State, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992) (specificity requirement for
a proper objection is met when the complaining party lets the trial court know what he wants, why
he thinks himself entitled to it, and does so clearly enough for the judge to understand him at a
time when the court is in the proper position to do something about it). Without Thompson
making any mention of "Have you heard" questions or "Do you know" questions or reputation
testimony or opinion testimony, the state notified the trial court that it believed Thompson had
opened the door to negative character evidence by eliciting from Veazy testimony of Thompson's
good character. The method by which the negative character evidence was to be offered was not
discussed. Thompson responded with the vague complaint that Veazy "can only testify to facts
he knows about." Judge Allen then, sua sponte, instructed the state only to ask "Have you heard"
questions. Thompson said nothing else.
      If Thompson's grievance truly was with the form of the questions, he would have, or at least
should have, objected when Judge Allen instructed the state only to ask "Have you heard"
questions. Appropriate objections would have been that "Have you heard" questions could not
be asked of an opinion witness, that only "Did you know" questions could be asked of an opinion
witness, or simply that the "Have you heard" form of the questions Judge Allen instructed the state
to use was improper. See Rutledge v. State, 749 S.W.2d 50 (Tex. Crim. App. 1988); see also
Reynolds v. State, 848 S.W.2d 785, 788 (Tex. App.—Houston[14th Dist.] 1993, pet. ref'd). 
Without such an objection, the purposes of a proper objection could not have been achieved. 
Maynard v. State, 685 S.W.2d 60, 64-65 (Tex. Crim. App. 1985) (The purposes of an objection
are: first, to inform the trial judge of the basis of the objection and afford him an opportunity to
rule on it; and second, to afford opposing counsel an opportunity to remove the objection or
supply other testimony.) Accordingly, we conclude that Thompson's objection was limited to an
argument under the general theory that Veazy, either as an opinion witness or a reputation witness,
should not be asked any questions about any allegations of extraneous offenses committed by
Thompson because they would concern facts about which he would have no way of knowing. 
Therefore, Thompson failed to preserve his complaint against the trial court's permitting the state
to ask questions of Veazy in the "Have you heard" form.
      Notwithstanding Thompson's failure to preserve error, we will discuss whether any error was
committed and, if so, whether such error was harmful.
      Prior to September 1, 1986, Texas law provided that character witnesses were allowed only
to offer testimony on the defendant's reputation in the community. See Rutledge, 749 S.W.2d at
52-53. Opinion testimony was not admissible either to establish the defendant's good character
or to impeach the testimony of a reputation witness who had testified that the defendant had a good
character. See Bratcher v. State, 771 S.W.2d 175, 186 (Tex.App.—San Antonio 1989, no pet.)
(Onion, J, writing for the majority). The testimony of reputation witnesses could be impeached
by asking questions of the witness about various extraneous offenses about which the prosecution
had a good faith belief the defendant had committed. See Brown v. State, 477 S.W.2d 617, 619-620 (Tex. Crim. App. 1972) (citing Hart v. State, 447 S.W.2d 944 (Tex. Crim. App. 1970)). The
prosecution, however, was restricted to using the "Have you heard" question form when asking
about the extraneous offenses, the theory being that reputation witnesses are testifying only to the
community's perception of the defendant's character and this perception is necessarily formulated
through the repeating of hearsay statements. Rutledge, 749 S.W.2d at 53. Indeed, the use of the
"Did you know" question form was held to constitute reversible error because improper
impeachment resulted when a witness testifying about the community's perception of the
defendant's character was asked whether he knew from his own, discrete knowledge that the
defendant may have committed various acts of misconduct. Id.
      On September 1, 1986, the rule restricting character evidence only to reputation evidence was
expanded to also allow evidence of a witness' opinion of the defendant's character when the Texas
Rules of Criminal Evidence were enacted. See Tex. R. Crim. Evid. 405(a). With the
introduction of opinion testimony came the corresponding need by the prosecution to impeach the
testimony of witnesses who testified that, in their opinion, the defendant had a good character
where, in fact, the true quality of the defendant's character was open to question. "Did you know"
became the proper form of the question to impeach the testimony of an opinion witness because
the state was then challenging, not the witness' knowledge of the community's perception of the
defendant's character, but the extent of the witness' knowledge of the actions which comprise the
defendant's true character. See Reynolds v. State, 848 S.W.2d 785, 788 (Tex.
App.—Houston[14th Dist.] 1993, pet. ref'd).
      Veazy was an opinion witness. His testimony about Thompson's character came from his
own personal observations of Thompson's actions through their relationship as friends. 
Consequently, as an opinion witness, it was error to impeach his testimony with "Have you heard"
questions. See Rutledge, 749 S.W.2d at 53.
      The error that occurred, however, was harmless. Tex. R. App. P. 81(b)(2). Thompson relies
upon Rutledge, Schumaker v. State, 704 S.W.2d 548 (Tex. App.—Corpus Christi 1986, no pet.),
and Brown v. State, 477 S.W.2d 617 (Tex. Crim. App. 1972), for the proposition that reversible
error results when an opinion witness is asked "Have you heard" questions. These cases,
however, were for trials conducted, unlike Thompson's, prior to September 1, 1986. 
      The change in Texas evidence law effectuated by rule 405(a) to allow the admission of opinion
evidence to establish a criminal defendant's character followed an identical change in federal
evidence law. See Fed. R. Evid. 405(a). The drafters of rule 405(a) of the Federal Rules of
Evidence, after which Texas Rule of Criminal Evidence 405(a) was patterned, faced the same
questions which we are addressing today in determining the proper manner of impeaching both
reputation and opinion witnesses who offer positive evidence of a defendant's character. After due
consideration, these drafters determined that, while "Did you know" questions should be addressed
to opinion witnesses and "Have you heard" questions should be asked of reputation witnesses, any
error a party made in using the wrong form would be harmless. See Bratcher v. State, 771
S.W.2d 175, 187 (Tex.App.—San Antonio 1989, no pet.) (quoting with approval 33 S. Goode,
O. Wellborn & M. Sharlot, Guide to the Texas Rules of Evidence: Civil and Criminal
§ 405.2 (Texas Practice 1988)). The Texas drafters apparently agreed with this reasoning. See
id. The Guide to the Texas Rules of Evidence is instructive:
The drafters of the federal rule, which is essentially the same as the new Texas
rule, decided that the difference between ["Have you heard" and "Did you
know"] questions has "slight if any practical significance," and the Texas
drafters apparently agreed. This type of cross-examination under Rule 405(a)
does not discriminate between character witnesses testifying to reputation and
those testifying to opinion, thus arguably permitting "Did you know? and "Have
you heard" questions to be asked of both. Such a dramatic change in our
traditional practice is open to question as a matter of logic. The reputation
witness purportedly bases her testimony on hearsay in the community. Her
personal knowledge or lack thereof concerning a specific act inconsistent with
the character trait to which she has testified would not seem to affect her
credibility as a reporter of the community's views. Similarly, the opinion
witness claims to testify from personal knowledge of the subject. Her personal
views of the subject's character are presumably unaffected by rumors
concerning the subject's character; certainly not if she has not heard such
discussions. The criteria employed by an opinion witness to reach a conclusion
as to the subject's good character might be adversely affected by her refusal to
change that opinion in the face of inquiry concerning prior misconduct. 
Moreover, such pointed examination would seem to threaten the general
prohibition on the use of specific act evidence. Although logically the best rule
would be to continue to restrict cross-examination of reputation witnesses to
"have you heard" and permitting only "did you know to be used in the cross-examination" of opinion witnesses, this is not required by Rule 405. It is
certainly to be hoped that reversal will not be predicated on the niceties of the
form in which the question is presented.

      We agree that the "niceties" of the form of the inquiry into the relevant specific instances of
misconduct should not constitute reversible error. See Bratcher, 771 S.W.2d at 187 ("Were you
aware" questions asked of an opinion witness not reversible error).
      Because we conclude that complaint was not preserved and that, even if it was, the error was
harmless, we overrule Thompson's first point.
      In his second point Thompson argues his federal constitutional rights against double jeopardy
were violated when he was sentenced twice for the same offense of indecency with a child. See
U.S. const. amend. V; North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23
L.Ed.2d 656 (1969) (federal double jeopardy clause protects against multiple punishments for the
same offense). In the second paragraph of his indictment Thompson was charged with indecency
with a child under the age of seventeen and not his spouse by touching her genitals. In the third
paragraph, he was charged with indecency with the same victim during the same incident but by
touching her breasts instead of her genitals. Thompson plead guilty to both counts and received
a sentence for each.
      Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed.2d 306 (1932)
sets out the test to determine whether a defendant has been punished twice for the "same offense"
as follows:
 
[W]here the same act or transaction constitutes a violation of two distinct
statutory provisions, the test to be applied to determine whether there are two
offenses or only one is whether each provision requires proof of an additional
fact which the other does not.

This test was reaffirmed in United States v. Dixon, — U.S. —, —, 113 S.Ct. 2849, 2859-2860,
125 L.Ed.2d 556 (1993). Where each offense requires proof of an element that the other does not,
multiple prosecution is not barred. David v. State, 808 S.W.2d 239 (Tex. App.—Dallas 1991,
no pet.) (citing Ex Parte McWilliams, 634 S.W.2d 815, 823-824 (Tex. Crim. App.), cert. denied,
459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602 (1982)). The defendant bears the burden to
present facts necessary to demonstrate a double jeopardy violation. David, 808 S.W.2d at 239
(citing Wockenfuss v. State, 521 S.W.2d 630, 631 (Tex. Crim. App. 1975)); see also Cochran v.
State, 874 S.W.2d 769, 772 (Tex. App.—Houston[1st Dist.] 1994, no pet.).
      Two courts of appeals have ruled that a sexual assault defendant who commits two different
acts of penetration during the same criminal episode does not have his federal constitutional rights
against double jeopardy violated when both acts of penetration are charged in the same indictment
as two separate offenses. Cochran v. State, 874 S.W.2d 769 (Tex. App.—Houston[1st Dist.]
1994, no pet.) (in three counts of aggravated sexual assault involving the same incident, penile
penetration of minor victim's mouth and vagina and penetration of the vagina with a finger); David
v. State, 808 S.W.2d 239, 242-243 (Tex. App.—Dallas 1991, no pet.) (penile penetration of minor
victim's vagina and mouth). In the instant case, for one of the offenses the state was required to
prove that Thompson touched the breasts of the victim while in the other the state needed to prove
he touched the victim's genitals. We conclude that, under the reasoning in Cochran and David,
that the federal double jeopardy rights of a defendant charged with two counts of indecency with
a child are not violated when he, during the same incident, touches both the breasts and the vagina
of the victim and is sentenced for two separate offenses. Thompson's second point is overruled. 
      The judgment is affirmed.
                                                                               BOBBY L. CUMMINGS
                                                                               Justice

Before Chief Justice Thomas,
      Justice Cummings, and
      Justice Vance
Affirmed
Opinion delivered and filed January 11, 1995
Do not publish