IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-04-00155-CR

 

Rickey Lynn Harrison, Sr.,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the 54th District Court

McLennan County, Texas

Trial Court No. 2003-993-C

 



MEMORANDUM  Opinion



 

Rickey Lynn Harrison was charged by indictment
with murder and injury to a child.  A jury found him guilty of the lesser
offense of manslaughter and of injury to a child.  The jury also found that Harrison used a deadly weapon in the commission of the offenses.  The jury assessed
punishment at fifteen years’ confinement for manslaughter and twenty years’
confinement for injury to a child.  Harrison brings five issues on appeal:  (1)
the trial court erred in allowing the State during the guilt-innocence phase to
ask questions concerning Harrison’s prior assault convictions; (2) the trial
court erred in entering the deadly-weapon finding because the State failed to
give proper notice of its intent to seek a deadly-weapon finding; (3) the
evidence is factually and legally insufficient to support a deadly-weapon
finding; (4) the evidence was factually and legally insufficient to prove the
manner and means of inflicting the injury was unknown to the grand jury; and
(5) the evidence is factually and legally insufficient to support both counts
because of inconsistent findings.

          We will reform the judgment to delete
the deadly-weapon finding and affirm.

BACKGROUND

          Harrison was tried for murdering and
causing serious bodily injury to his eight-month-old son.  The baby lived with
the baby’s mother, grandmother, and his mother’s brothers and sisters.  The
baby’s mother testified that Harrison stayed at the house the night before the
baby died.  She testified that had put the baby to bed in her room with Harrison while she went to take a shower.  While she was showering, she heard the baby
crying.  When she returned to her room, the baby was having a hard time
breathing and looked sleepy.  A few minutes later, the baby vomited.  The baby
threw up twice more and also fell out of the bed during the night.

The following morning, the grandmother took the
mother to school.  The grandmother and one of the mother’s brothers were taking
the baby to the doctor when the baby stopped breathing.  They stopped at the
police station, and an officer attempted CPR on the baby.  The baby was taken
to a hospital.

A forensic pathologist testified that the baby
died of blunt force trauma to the abdomen.  He testified that the baby had many
older injuries and bruises in addition to the trauma that resulted in his death. 
He estimated that the trauma occurred within fourteen hours before the baby
died.  He testified that after receiving this kind of injury, a baby would
likely cry, have breathing difficulties, vomit, and appear sleepy.

Harrison
did not testify.  A statement made by Harrison to police was admitted into
evidence.  In the statement, Harrison states that he and his son used to
play-fight and Harrison would “softly hit him” in the body.  The officer who
took the statement testified that Harrison told him that he could have hit the
baby too hard.  A different officer testified that in the course of being taken
to jail, Harrison mumbled “I killed him” under his breath.  Two child witnesses
for the defense testified that the baby’s mother’s youngest sister told them
that she had killed her nephew.

Prior Convictions

            Harrison argues that the trial court
erred in allowing the State, during the guilt-innocence phase, to ask “were you
aware” questions concerning Harrison’s prior assault convictions.  A trial
court has wide discretion in admitting evidence of a defendant’s prior
convictions.  Theus v. State, 845 S.W.2d 874, 881 (Tex. Crim. App.
1992).  We will not reverse the trial court’s ruling absent an abuse of
discretion.  Id.

          The defense called several witnesses
to testify to what kind of father Harrison was and how he interacted with
children.  One of those witnesses testified as follows:

Question:       Could you tell us how you know
Rickey Harrison?

Answer:        Well, I know Rickey through my
son, Detrick Evans.  They were 

good friends.  He was a sweet person, he was a
good person.  He used to stay the nights at my house.  He done watched my kids
and I didn’t have a problem with him. 

 

The prosecution argued at trial, and reasserts
the argument on appeal, that because the witness testified that Harrison was a “good person” and a “sweet person,” she opened the door for the State to
rebut her opinion testimony.

“Do you know” questions (or “were you aware”
questions) are permissible under rules 405(a) and 404(a)(1) of the Rules of
Evidence.  Tex. R. Evid.
404(a)(1), 405(a); Reynolds v. State, 848 S.W.2d 785, 788 (Tex.
App.—Houston [14th Dist.] 1993, pet. ref’d); Bratcher v. State, 771
S.W.2d 175, 187 (Tex. App.—San Antonio 1989, no pet.) (“were you aware”
questions acceptable for opinion witness).  Rule 404(a)(1) allows an accused to
offer general reputation or opinion testimony to prove character.  Thomas v.
State, 759 S.W.2d 449, 452 (Tex. App.—Houston [14th Dist.] 1988, pet.
ref'd).  Rule 405(a) states that character witnesses may be cross-examined on
“relevant specific instances of conduct.”  Tex.
R. Evid. 405(a).  Reputation witnesses may be examined with “have you
heard” questions; opinion witnesses may be examined with “do you know”
questions.  Reynolds, 848 S.W.2d at 788.  Before such cross-examination
can take place, the State must establish a two-part predicate for the
question.  First, there must be a factual basis for the incidents inquired
about; and second, the incidents must be relevant to the character trait at
issue.  Murphy v. State, 4 S.W.3d 926, 931 (Tex. App.—Waco 1999, pet.
ref’d).

Harrison
does not argue that there was no factual basis for the prior convictions; nor
does he argue that the prior convictions are irrelevant to the character traits
of being a good or sweet person.  Rather, he argues (1) that the witness’s
response went solely to the issue of how Harrison treated his child or the
witness’s children; and (2) the witness’s answer was non-responsive.  We do not
agree that the witness’s statement that Harrison is a good and sweet person was
limited to his interaction with children.  The statement itself was not
qualified, nor was it made in the context of a discussion of Harrison’s
interaction with children.

However, we do agree that the witness’s answer
was unsolicited and not responsive to any question asked.  It is apparent from
defense counsel’s questions on direct examination that defense counsel sought
the witness’s observations of Harrison’s interaction with his own child and
with the witness’s children:

Q.      . . . . Could you tell us how you know
Rickey Harrison?

. . . .

Q.      Rickey stayed nights at your house?

. . . .

Q.      Okay.  And he’d watch your kids?

. . . .

Q.      Okay.  And how old were your kids when
Rickey was doing that?

. . . .

Q.      Okay.  Rickey ever beat up on your
little babies?

. . . .

Q.      Okay.  Did you ever see Rickey as he
interacted with his own baby . . . ?

. . . .

Q.      Did he act like he liked the kid?

. . . .

Q.      Did he ever—did he ever hurt him?

. . . .

Q.      Do you believe for even a minute that he
would hurt him?

 

The defense counsel’s questions did not solicit
the witness’s opinion as to Harrison’s character or Harrison’s reputation in
the community.

The issue is whether the defense witness’s
volunteered, non-responsive opinion testimony nonetheless placed Harrison’s character at issue, thus opening the door for “were you aware” questions. 
Courts have found similar witness testimony insufficient to place the
defendant’s reputation at issue so as to allow the State to rebut with “have
you heard” questions.  See, e.g., Rutledge v. State, 749 S.W.2d 50, 51
(Tex. Crim. App. 1988) (witness testified defendant was impeccable, never
drank, didn’t curse, and was just a nice person); Stephens v. State, 660
S.W.2d 85, 86-87 (Tex. Crim. App. 1983) (wife of defendant testified her
husband loved her family, supported family, held a steady job, and participated
on a track team, basketball team, and community cleanup committee); Nixon v.
State, 653 S.W.2d 443, 444 (Tex. Crim. App. 1983) (defendant’s supervisor
testified he was a hard worker, ideal employee, and "a very kind guy"
who got along with everyone and often volunteered to help others); Smith v.
State, 763 S.W.2d 836, 840 (Tex. App.—Dallas 1988, pet ref'd) (witness
testified  “have never known him [defendant] to be in any kind of trouble”); Powell
v. State, 663 S.W.2d 465, 466-67 (Tex. App.—Houston [1st Dist.] 1983, no
pet.) (witness testified defendant was “nice person” who didn't create problems
around apartment complex).

We conclude that the defendant did not place his
character or reputation at issue through the witness’s testimony.  Therefore,
the State should not have been allowed to ask the witness “were you aware”
questions. 

 Having held that the “were you aware” questions
were improperly allowed, we must now determine whether Harrison was harmed by
the error.  Error under the rules of evidence in admitting evidence of
extraneous offenses is non-constitutional error governed by Rule of Appellate
Procedure 44.2(b).  Tex. R. App. P.
44.2(b); Johnson v. State, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). 
In conducting a harm analysis under Rule 44.2(b), we decide “whether the error
had a substantial or injurious effect on the jury verdict.”  Morales v.
State, 32 S.W.3d 866, 867 (Tex. Crim. App. 2000).  The reviewing court
should “consider everything in the record, including any testimony or physical
evidence admitted for the jury’s consideration, the nature of the evidence
supporting the verdict, the character of the error and how it might be considered
in connection with other evidence in the case[,] . . .the jury instruction
given by the trial judge, the State’s theory and any defensive theories,
closing arguments, and voir dire if material to appellant’s claim.”  Id.

The State’s theory was that Harrison caused the
baby’s injuries on the evening before the baby died.  The forensic examiner
testified that the injury was consistent with a strong blow to the baby’s
abdomen.  The examiner testified that the injury would not be consistent with
the baby’s falling out of bed.  The examiner also testified that the symptoms
the baby would display after receiving the injury would be crying, difficulty
breathing, vomiting, and sleepiness.  The child’s mother testified to
witnessing all of these symptoms that evening after she left the baby with Harrison.  The officer taking Harrison’s statement that he used to play-fight with the baby
testified that Harrison told him that maybe he hit the baby too hard.  Another
officer testified that Harrison mumbled under his breath “I killed him.”  The
defense introduced witness testimony that the child’s mother’s eleven-year-old
sibling said that she had killed the baby.

The jury was instructed that evidence regarding Harrison’s convictions could not be considered as evidence of guilt, and could be
considered only with regard to the credibility of witnesses.  Unfortunately,
the prosecution used the prior convictions not only to cross-examine the
witness, but also to argue that Harrison was an angry person:

Think about the defendant’s anger.  I think this
is important.  He has previous assaultive behavior that you-all know about it
now because you weren’t going to be left with the impression that he was a good
and sweet boy like their witnesses tried to make him out to be.  He’s got an
anger problem.  He punched holes in those walls.  He was jealous of that baby,
and that was why he got angry with [the baby’s mother].  

 

We do not approve of the
prosecution’s argument.  However, after reviewing the record as a whole, we
conclude that the error probably did not influence the jury or had only a
slight influence on its verdict.  Bagheri v. State, 119 S.W.3d 755, 763
(Tex. Crim. App. 2003).  Finding the error did not affect Harrison’s
substantial rights, we overrule this issue.

Deadly-weapon Issues  

          Harrison’s second issue
argues that he did not receive adequate notice of the State’s intent to seek a
deadly-  deadly "fied defendant was "he
deadly-weapon finding and affirm.theweapon finding.  A defendant is
entitled to notice that the State will seek an affirmative finding that a
deadly weapon was used during the commission of the charged crime.  Ex parte
Brooks, 847 S.W.2d 247, 248 (Tex. Crim. App. 1993); Narron v. State,
835 S.W.2d 642, 643 (Tex. Crim. App. 1992).  The State responds that the
indictment placed the defendant on notice because it charged Harrison with “an
act clearly dangerous to human life, to-wit: striking [victim] about the body
with a blunt object unknown to the grand jury, that caused the death of
[victim].”  However, for notice to be sufficient it must specifically mention a
particular object or substance and its use with respect to death or serious
bodily injury.  Narron, 835 S.W.2d at 643; Mata v. State, 939
S.W.2d 719, 727 (Tex. App.—Waco 1997, no pet.).  Because the State failed to
specify the particular weapon used to strike the victim, the indictment did not
provide sufficient notice of the State’s intent to seek a deadly-weapon
finding.  Id.

          Having determined that the
trial court erred in entering an affirmative finding of a deadly weapon against
 Harrison, we now determine how the error affected the trial court’s judgment
and sentencing.  The deadly-weapon special issue could not have influenced the jury’s
determination on Harrison’s guilt because it was not read to the jury until the
guilty verdicts had been reached.  Mata, 939 S.W.2d at 727.  We do not
find that the improperly submitted deadly-weapon special issue adversely
affected the sentencing phase.  Id.  We will reform the judgment to
delete the affirmative finding on the use of a deadly weapon.

          Having sustained Harrison’s second issue, we need not consider his third and fourth issues, both of which
concern the deadly-weapon finding.

Inconsistent Verdicts

          In his fifth issue, Harrison argues that the jury’s verdicts are inconsistent and demonstrate a lack of
evidence of intent to commit serious bodily injury.  Harrison contends that his
conviction for recklessly causing the victim’s death and his conviction for
intentionally or knowingly causing serious bodily injury are irreconcilable.  Inconsistent
verdicts, however, do not of themselves require a finding of legal
insufficiency to support the findings adverse to the criminal defendant.  See
Ruiz v. State, 641 S.W.2d 364 (Tex. Crim. App. 1982).  Instead of summarily
finding the evidence legally insufficient to support the jury’s verdict of
guilt, the appellate court should examine the legal sufficiency of the evidence
to support the counts on which a conviction was rendered.  Id.; Moranza
v. State, 913 S.W.2d 718, 724 (Tex. App.—Waco 1995, pet. ref’d).

          In a legal sufficiency
review, we examine the evidence presented in the light most favorable to the
verdict and determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 318-319, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560
(1979).  Harrison contends that there was no evidence that he intentionally caused
serious bodily injury to the child.  On the question of intent, the jury is
called upon to review all the evidence and may reasonably conclude from the
circumstantial evidence that the requisite mental state existed.  Morales v.
State, 828 








S.W.2d 261, 263 (Tex. App.—Amarillo
1992), aff’d, 853 S.W.2d 583 (Tex. Crim. App. 1993).

          The State presented
evidence that the fatal injury occurred while Harrison was in the bedroom with
the child.  The forensic pathologist testified that the injury was caused by a
blunt instrument that was forceful enough to press the child’s internal organs
against his backbone.  The pathologist testified that the child’s injuries were
not consistent with falling from a chair or from a bed.  The pathologist also
testified that the autopsy revealed several other, older internal injuries that
were in various stages of healing.  Medical evidence of this nature is
sufficient for the jury to infer the defendant’s intent to cause the child
serious bodily injury.  Id.; Moore v. State, 708 S.W.2d 484,
487-88 (Tex. App.—Dallas 1986), rev’d on other grounds, 749 S.W.2d 54
(Tex. Crim. App. 1988); Crouch v. State, 702 S.W.2d 660, 662 (Tex.
App.—Tyler 1985, pet. ref’d).  Finding the evidence legally sufficient to
support the verdict, we overrule this issue.

CONCLUSION

          We reform the judgment to
delete the deadly-weapon finding.  We affirm the judgment as reformed.

 

 

BILL VANCE

Justice

 

Before Chief Justice Gray,

Justice Vance, and

Justice Reyna

          (Chief Justice Gray dissenting)

Reformed and affirmed

Opinion delivered and filed July 20, 2005

Do not publish

[CR25]dly he deadly weapon